[Cite as *Hetterick v. Hetterick*, 2013-Ohio-15.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

| | | |
|---|---|---|
| RALPH T. HETTERICK, | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2012-02-002 |
| | : | O P I N I O N |
| - vs - | | 1/7/2013 |
| | : | |
| ROBERTA A. HETTERICK n.k.a. | : | |
| Clonch, et al., | | |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. DRA 2005 0543

John Woliver, 204 North Street, Batavia, Ohio 45103, for plaintiff-appellant

L. Patrick Mulligan & Associates, L.P.A., L. Patrick Mulligan, 225 West Court Street, Cincinnati, Ohio 45202, for defendants-appellees, Roberta A. Hetterick and Monica Harless

George A. Katchmer, 1886 Brock Road, N.E., Bloomingburg, Ohio 43106, for defendant-appellee, Heather Hetterick


**PIPER, J.**

{¶ 1} Plaintiff-appellant, Ralph Hetterick, appeals a decision of the Brown County Court of Common Pleas, Domestic Relations Division, finding him in contempt for failing to pay college-related expenses as ordered in a divorce decree.

**Statement of Facts**

{¶ 2}   Ralph (Father) and Roberta (Mother) Hetterick were married in 1981, and had two children born issue of the marriage.  Father and Mother divorced in 2005, at which time, both children were emancipated.  Within the parties' Separation Agreement, Father agreed to be "solely responsible for payment of the college expenses of the two children of the parties * * *."  Father further agreed to hold Mother harmless on the children's student loan debt that existed at the time of the separation, as well as "future college expenses for each of the two children, not to exceed 4 years."

{¶ 3}   The Separation Agreement also contained an incorporation clause, incorporating the agreement regarding college expenses into the divorce decree.  Within that incorporation clause, the parties agreed that Father's obligation regarding the college expenses was limited to a total of four years for each child and that the older child, Monica, had already completed three years of college so that Father "shall pay for 1 additional year."  At the time of the agreement, Heather, the younger child, was a freshman in college and Father was obligated to pay for "3 ½ years" of her college expenses.

{¶ 4}   Father initiated several federal loans designed for parents in order to pay for the college expenses.  While Monica did not finish college, and instead got married and began having children, Heather began taking general-course classes at the University of Cincinnati, Clermont campus.  Although Heather had been accepted into a school in New York, she agreed to stay in Ohio so that she could live with her grandparents and save her father money on room and board.  Heather would initiate loans in her name that were intended for students, and either pay for books or give the money to Father to pay on the overall college expenses.  The first few years of Heather's college experience passed without much incident.

{¶ 5}   However, when Heather began the final years of her schooling, Father refused to take out additional loans to pay for summer courses and a trip to France that Heather

needed in order to complete her degree in Marketing and International Business. Heather first informed her father of her intention to take summer classes in order to ensure her graduation within four years. However, Father told her that he was not going to pay for college courses during the summer. Heather also informed Father that she was required to study abroad as part of the curriculum for International Business, and that she was going to France. Father also refused to pay for the study abroad program. In addition to the student loans she had already taken out in her own name for college expenses, Heather was forced to take out loans in her own name to pay for the summer classes, as well as the study abroad program. Heather graduated from college and became liable on the student loans she procured in her own name, and those she procured in order to pay for summer school and the study abroad program.

{¶ 6} Also during this time, Mother received multiple calls from Great Lakes, the servicer of Monica's student loans, stating that loan payments were not being made. Mother informed Great Lakes that Father was under a court-ordered obligation to pay for the loans, and to hold her harmless. While Father paid the loan payments, he did so sporadically and the payments were often late. Nonetheless, Mother did not pay a single loan payment, and Father continued to make payments.

{¶ 7} When Mother received more phone calls from Great Lakes, she filed a show cause motion, alleging that Father was in contempt for not paying the loans as ordered in the Separation Agreement and divorce decree. Mother also asserted that her credit rating had suffered because of Father's late payments, and that she was unable to receive financing for her own educational endeavors as a result.

{¶ 8} Monica and Heather were granted leave to join in the contempt motion. Monica asserted that Father's failure to pay on the loan for her college expenses negatively impacted her credit, that she and her husband were unable to obtain a mortgage with favorable interest

rates, and that she had been unable to refinance her home to a more favorable interest rate. Heather asserted that Father failed to pay for the loans in her name, including those taken out to pay for the summer courses and the study abroad trip, and that his failure to do so was impacting her credit negatively because evidence of default appeared on her credit report. Heather also produced evidence that she had been forced to make payments on the loans in her name to stop the negative impact on her credit.

{¶ 9}   A magistrate held a hearing on the joint motion to show cause, at which Mother, Monica, Heather, and Father testified and submitted evidence regarding the loans, payments made, and outstanding balances that were due and owing. The magistrate found that Father failed to pay all of the college expenses as ordered in the divorce decree. The magistrate further found that Mother's credit had been harmed, but that Monica's credit rating had been harmed by other factors not limited to Father's late payment history. The magistrate also found that Father was required by the divorce decree to pay for Heather's college expenses, which included the loans Heather took out in her own name, as well as the loans Heather procured for the summer courses and study abroad trip.

{¶ 10} The magistrate, finding Father in contempt, ordered that Father serve 30 days in jail, and suspended that sentence provided that Father comply and pay the college expenses as ordered. Within the orders, Father was required to bring current all the student loan payments, as well as pay Heather directly for the amounts she had paid toward her student loans. Father was also ordered to pay attorney fees to Mother and Heather. The magistrate ordered that Father was required to comply with the orders within six months, or serve the 30-day sentence.

{¶ 11} Father filed objections to the magistrate's decision, arguing that the magistrate erred in finding that he had failed to pay all of Heather's college expenses, and by finding that Mother's credit had been harmed as a result of his failure to pay the loans on a timely basis.

The trial court overruled Father's objections, and adopted the magistrate's decision in full.

**{¶ 12}** Father appealed the decision of the trial court, and this court asked each party to file supplemental briefs regarding whether the finding of contempt was a final appealable order, specific to this court's previous decision in *Dudley v. Dudley*, 12th Dist. No. CA2010-05-114, 2012-Ohio-225. In *Dudley*, the majority determined that the finding of contempt was not a final appealable order because the punishment was set for execution at a future date, giving the party time to first purge before the jail sentence was executed. The parties complied with this court's request, both arguing that the matter was final and appealable. Before addressing the merits of the appeal, we will address the final appealable order issue.

**Final Appealable Order**

**{¶ 13}** Appellate courts have jurisdiction over judgments or "final orders." Section 3(B)(2), Article IV, Ohio Constitution, and R.C. 2505.03(A). Final orders are those that dispose of the whole case or some separate and distinct subdivision of it while leaving nothing for future determination. *VIL Laser Sys., L.L.C. v. Shiloh Indus., Inc.,* 119 Ohio St.3d 354, 2008-Ohio-3920, ¶ 8. Before a finding of contempt of court constitutes a final appealable order, two elements must exist: (1) a finding of contempt, and (2) the imposition of a penalty or sanction. *State ex rel. Doe v. Tracy*, 51 Ohio App.3d 198 (12th Dist.1988).

**{¶ 14}** As previously stated, this court addressed a similar issue regarding contempt in *Dudley v. Dudley*, and dismissed the case for lack of a final appealable order because the trial court gave the appellant the opportunity to purge himself of the contempt by paying what he owed. The majority determined, "to finalize the order, the trial court needed to find that [appellant] failed to purge himself and then actually impose the penalty or sanction. Because the trial court failed to do so, the May 7, 2010 order is still conditional and not ripe for review." *Dudley* at ¶ 16.

**{¶ 15}** The dissent in *Dudley* reasoned that the trial court's finding of contempt was not

a conditional punishment because appellant was given a definite sentence and was found to be in continuing contempt. Further, the trial court's wording indicated that no further proceedings were necessary before executing the contempt punishment. Recently, the Eighth District Court of Appeals released a decision that comports with the reasoning offered by the dissent in *Dudley*. *Briggs v. Moelich*, 8th Dist. No. 97001, 2012-Ohio-1049.

{¶ 16} In *Briggs*, a unanimous Eighth District determined that the trial court properly found appellant in contempt, and that the order was final and appealable. The trial court found appellant in contempt for failing to comply with court orders regarding property division following a divorce. The trial court sentenced appellant to 30 days in jail "subject to certain purge conditions." *Id.* at ¶ 3. These conditions included: delivering to appellee the items of personal property awarded to him; paying appellee $3,848.49 for interference with the sale of the marital property; obtaining a replacement title to a boat and delivering such to appellee; and paying appellee's attorney fees. All of the conditions had to be complied with within 45 days of the journalization of the court's entry. In addition to the terms, the court also ordered that if appellant failed to comply with the purge conditions, she would have to pay a final judgment in favor of appellee for $15,848.49 and also serve a 30-day jail sentence.

{¶ 17} The Eighth District found that the mere adjudication of contempt of court is not a final appealable order when the court defers the imposition of punishment for contempt. However, the fact that the opportunity to purge is pending does not render the order unripe for review when the contempt order includes *the imposition of a penalty or a sanction.* The trial court's order in *Briggs* included an order of contempt and the imposition of a penalty and a sanction, mainly the 30-day jail sentence and monetary sanction for attorney fees and appellant's failure to comply with the purge conditions.

{¶ 18} Other courts have found that a contempt finding paired with an imposition of sentence to be a final and appealable order. The Fourth District Court of Appeals considered

- 6 -

whether a finding of contempt was a final appealable order, and determined that it was a final appealable order because a sentence was imposed even though the contemnor was given a chance to purge the contempt before the sentence would be executed. *Davis-Wright v. Wright*, 4th Dist. No. 09CA1, 2010-Ohio-3984. The *Davis-Wright* court determined that the trial court's sentence was imposed regardless of the opportunity to purge because "no further proceedings are necessary or contemplated before the jail sentence is to be imposed." *Id.* at ¶ 8. Similarly, the Ninth District Court of Appeals determined that a finding of contempt was a final appealable order once the trial court imposed a jail sentence. *Noll v. Noll,* 9th Dist. No. 03CA008216, 2003-Ohio-5358. The *Noll* court found that the imposition of jail time, notwithstanding the ability to purge, made the cause final and appealable.

{¶ 19} Part of the analysis of both the *Davis-Wright* and *Noll* courts focused on the fact that the imposition of a jail sentence affects a substantial right, and that according to R.C. 2505.02(B)(1), an order must affect a substantial right in order to be final and appealable. We agree with the reasoning of the Fourth, Eighth, and Ninth District Courts, as discussed above, as well as the position espoused by both parties to the current action.[1] We find that a contempt finding paired with an imposition of a sentence or sanction constitutes a final appealable order regardless of the opportunity to purge the contempt. Therefore, we overrule our decision in *Dudley*.

{¶ 20} Our reasoning in *Dudley* essentially forced litigants in contempt actions to choose one of two options: (1) disobey a purge order and face immediate incarceration, or (2) comply with the order and forfeit a meaningful appeal even though the party believes that

---

1. While not directly on point, we are also guided by the Ohio Supreme Court's decision in *State v. Smith*, 131 Ohio St.3d 297, 2012-Ohio-781. There, the court found that the review of a trial court's failure to notify a defendant that his failure to pay court costs would result in an imposition of community service is ripe for review even if the defendant had not yet paid for the fees or been ordered to perform community service as a result of the failure to pay. Instead, the court found that the issue becomes ripe for review upon the date of the trial court's sentencing entry.

the order was wrongly imposed. Dismissing an appellant's appeal for lack of a final appealable order under these and similar circumstances would effectively deny the ability to seek judicial review of the trial court's decision, thus forcing an appellant to waive the right to purge himself of the contempt finding, as he would first have to disobey the order before being permitted to obtain appellate review. We do not believe this is the proper course, and instead, seek to determine the merits of a case whenever possible, especially when one's substantial rights are implicated.

{¶ 21} The record here is clear that the trial court found Father in contempt, and imposed a sentence on him for his contempt, 30 days in jail. The fact that the court gave Father six months to comply with its order in order to purge the contempt, however, did not in any way negate or eliminate the 30-day sentence. There is no indication in the record that any action other than Father's failure to purge would be necessary before the 30-day sentence is executed. Therefore, the finding of contempt and the imposition of the sentence has rendered this cause final and appealable. Therefore, we will now address Father's assignments of error.

### College Expenses

{¶ 22} Assignment of Error No. 1:

{¶ 23} THE TRIAL COURT ERRED BY REWRITING THE TERMS OF THE PROPERTY DIVISION OF THE DECREE OF DIVORCE.

{¶ 24} Father argues in his first assignment of error that the trial court erred by finding the loans procured to pay for summer classes and Heather's study abroad trip to be college expenses.

{¶ 25} "A separation agreement is a contract, and is subject to the same rules of construction as other contracts." *Wittstein v. Wittstein*, 12th Dist. No. CA2006-03-013, 2006-Ohio-6707, ¶ 8, citing *Forstner v. Forstner*, 68 Ohio App.3d 367, 372 (11th Dist.1990).

Where the terms of a separation agreement are clear and unambiguous, the words used must be given their plain and ordinary meaning and a court must give effect to the agreement's expressed terms. *Id.* "Contract terms are ambiguous where the language is susceptible to two or more reasonable interpretations." *Id.* at ¶ 8.

{¶ 26} "When enforcing a separation agreement incorporated into a divorce decree, a trial court has authority to hear the matter, clarify confusion over the interpretation of any particular clause, and resolve the dispute." *Key v. Key*, 12th Dist. No. CA99-08-020, 2000 WL 959496, *2 (July 3, 2000). "Additionally, provisions of separation agreements relating to support, maintenance and education of children are to be given a reasonable interpretation, so as to give effect to the intention of the parties." *Uram v. Uram*, 65 Ohio App.3d 96, 99 (9th Dist.1989).

{¶ 27} Father argues that the clause in the Separation Agreement, as incorporated into the divorce decree, is clear and unambiguous because his obligation was to pay the college expenses for his children for four years. Father asserts that because he paid for Heather's room and board and tuition, or continues to pay on the loans, he has fulfilled his obligation. However, the trial court interpreted the divorce decree and found that the term "college expenses" included all loans Heather incurred in her own name that went to pay for college expenses. These loans included amounts that Heather gave her father toward tuition, as well as monies to pay for college courses during the summer and the study abroad trip to France. We agree with the trial court that these loans are college expenses that Father is obligated to pay.

{¶ 28} Father and Mother's Separation Agreement and divorce decree states that Father would be responsible for payment of "the college expenses of the two children of the parties * * * not to exceed 4 years." The Separation Agreement then went on to state that Father's obligation to pay the college expenses was limited to four years for each child, or

one remaining year for Monica and three and one-half for Heather. Beyond the specific time frame set forth, the Separation Agreement does not limit the college expenses to only fall, winter or spring terms, nor does it limit what kind of expenses the obligation covers. *See Uram*, 65 Ohio App.3d 96, (limiting "college costs" to tuition, fees, and books because "college expenses" was defined in the divorce decree as tuition, fees, and books).

{¶ 29} During the hearing, Heather testified that she initiated loans in order to pay for her college education, and that she needed to take the summer courses so that she could transfer from the Clermont campus to the main University of Cincinnati (UC) campus and be on the proper time table to graduate in four years. Heather also testified that as part of the International Business curriculum, she was required to take a course overseas. Heather's testimony was supported by an exhibit stating that UC's curriculum required that "students must also complete a study abroad or other qualifying significant international experience * * *." The charge for the study abroad program was no greater than the tuition that would have been charged had Heather taken courses regularly at UC.

{¶ 30} The term "college expenses" as stated in Father and Mother's Separation Agreement, lacking any further definition or clarification from the parties, was open to reasonable interpretation because Father did not expressly state what his intention was regarding the future obligation to pay for his daughters' college education save that the expenses were limited to a specific number of years. Had Father not intended to pay for summer classes, he should have included that term in the Separation Agreement. So too should Father have included a statement that he would not be obligated to pay for college expenses if those expenses included a study abroad program or otherwise required Heather to procure loans in her own name. The only clarification or express term Father included was that the education be limited to four years for each child. The record is clear that Heather graduated in four years, after having taken all necessary courses to graduate within that time

frame, and Father is required to pay the college expenses she incurred while pursuing her degree at UC within four years.

{¶ 31} Having found that the trial court properly determined that the loans taken in Heather's name were college expenses to be paid by Father, Father's first assignment of error is overruled.

### Contempt

{¶ 32} Assignment of Error No. 2:

{¶ 33} THE TRIAL COURT ERRED BY HOLDING APPELLANT IN CONTEMPT AND ORDERING APPELLANT TO PAY ATTORNEY FEES.

{¶ 34} Father argues in his second assignment of error that the trial court erred in finding him in contempt and in ordering him to pay attorney fees.

{¶ 35} Contempt of court is defined as "disobedience of an order of a court * * * which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Sparks v. Sparks*, 12th Dist. No. CA2010-10-096, 2011-Ohio-5746, ¶ 11, quoting *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, paragraph one of the syllabus (1971). To support a contempt finding, the moving party must establish by clear and convincing evidence that a valid court order exists, that the offending party had knowledge of the order, and that the offending party violated such order. *Ossai-Charles v. Charles,* 12th Dist. Nos. CA2010-12-129, CA2011-01-007, 2011-Ohio-3766, ¶ 30.

{¶ 36} Father was found to be in civil contempt for his failure to pay the college expenses. "The distinction between civil and criminal contempt depends upon the character and purpose of the sanctions imposed." *Mackowiak v. Mackowiak,* 12th Dist. No. CA2010-04-009, 2011-Ohio-3013, ¶ 38. Where the sanctions imposed are primarily for reasons benefiting the complainant and are remedial and coercive in nature, the contempt is civil in

nature. *Id.* at ¶ 39. "Prison sentences imposed as punishment for civil contempt are conditional, and the contemnor is said to carry the keys of his prison in his own pocket due to the fact that his compliance with the court order secures his freedom." *Whittington v. Whittington,* 12th Dist. No. CA2011-06-065, 2012-Ohio-1682, ¶ 23.

{¶ 37} A trial court's finding of civil contempt will not be disturbed on appeal absent an abuse of discretion. *Mackowiak* at ¶ 45. An abuse of discretion constitutes more than an error of law or judgment; it requires a finding that the trial court acted unreasonably, arbitrarily, or unconscionably. *Miller v. Miller,* 12th Dist. No. CA2001-06-138, 2002-Ohio-3870, ¶ 8.

{¶ 38} In order for the trial court to hold Father in contempt, there must have been clear and convincing evidence that an order existed, that Father had knowledge of the order, and that he violated the order. The evidence deduced at trial demonstrated that the order to pay college expenses existed and that Father violated the order by not paying for the expenses. However, there is not clear and convincing evidence that Father was aware of the order as it related to what exact college expenses were due and owing.

{¶ 39} During Heather's testimony, she admitted that she did not give Father the bills for the loans that were in her name and that she never forwarded the invoices to her father. During cross-examination, the following exchange occurred.

> [Q] Have you ever presented any of these bills to your father and told him he's obligated to pay them?
>
> [A] No.
>
> * * *
>
> [Q] How about the Chase Bank Loan?
>
> [A] Not after he refused to pay it.
>
> [Q] Okay.

- 12 -

[A] I took it upon myself.

[Q] So you've never presented any of these three documents to him and said, You [sic] have to pay them?"

[A] Why would I if he refused the first time?

[Q] I get to ask the questions. Have you presented them to him or not?

[A] No.

[Q] No?

[A] No.

{¶ 40} This exchange demonstrates that Father did not have any knowledge as to the total amount of the college expenses due and owing regarding the loans taken out in Heather's name. With Heather as the only signator on each loan, Father would not have any access to the amount that was ultimately borrowed, what payments were owed, where to send the payments, or even who loaned Heather the money. Heather had to have first presented the bills to Father before it can be said that he knew what was due and what payments he was ordered to make.

{¶ 41} This court is aware of the fact that Heather did present the *idea* and her *intention* to take summer courses and study abroad. Father does not deny the fact that he told Heather that he would not be responsible for these bills should Heather choose to follow through on her plans. However, such does not change the fact that Father remained unaware of what loans Heather ultimately incurred, or how he could have paid them if he had changed his mind and chosen to obey the court's order. Heather was of the opinion that giving her father the bills was an exercise in futility because of his previous statement that he would not pay. However, from a legal standpoint, Father should have been presented the bills thereby leaving the decision of compliance up to Father. Actual presentation of the expenses for which reimbursement was sought would have clearly defined Father's ultimate

response – to pay or not to pay. According to the legal standard, to support a finding of contempt, Father needed to disobey an order of the court, not merely a request from his daughter.

{¶ 42} As one court has stated,

> it is necessary to have a prior violation. Prior to the disobedience, the request for a finding of contempt is merely prospective in nature, as it presumes that the party will violate the court order without any affirmative act to support the claim. There is no doctrine of anticipatory contempt in our legal system. An adjudication of contempt relates to past conduct, not prospective conduct. Prior to the end of the time for performance, any alleged failure to perform is speculation and cannot be the basis for a contempt finding. To hold otherwise would result in the dockets of the courts being filled with antagonistic parties filing motions to show cause merely because they believe the other party is going to violate the court's orders.

*Kirk v. Kirk*, 172 Ohio App.3d 404, 2007-Ohio-3140, ¶ 5 (3rd Dist.). (Internal citations omitted.)

{¶ 43} Having found in the first assignment of error that the trial court properly found that Father was required to pay for the loans in Heather's name as valid college expenses, there is no doubt that Father has an obligation to pay the amounts owed. However, we cannot say that Father was in contempt for not paying, as he was not presented the opportunity to pay the bills or given the requisite information necessary to pay them. Heather must present Father with the pertinent invoices and payment information, and Father shall pay according to the court order requiring him to do so.

{¶ 44} The magistrate also found Father in contempt for failing to pay Monica's loans, which were also in Mother's name, thereby harming Mother's credit rating. The record indicates that due to Father's failure to pay Monica's loans in a timely and consistent manner, Mother's credit suffered. Mother testified that as a result of her decreased credit rating, she could not obtain the necessary financing to allow her to seek her own educational goals.

Unlike Heather's bills, there is no doubt that Father was well aware of the amount due and owing, as he received several bills from Mother, and further had access to Monica's loan information. Therefore, Father knew what exactly he was required to pay, when it was due, where to make the payments, and the general details of the loan necessary to execute repayment. The fact that Father chose not to consistently make payments in a timely manner constituted disobedience of the court order requiring him to pay, and the trial court did not abuse its discretion in finding him in contempt as related to these circumstances.

{¶ 45} The trial court awarded attorney fees based on the contempt finding which we have determined was partly in error. Therefore, upholding the award in this case in full would be inequitable, and we also reverse the award of attorney fees as it relates to the contempt motion for Heather's bills. See *Manker v. Manker,* 12th Dist. No. CA2005-12-106, 2006-Ohio-6545, ¶ 25. However, given our finding that Father was properly held in contempt for failing to make timely payments on Monica's loan, the trial court must determine whether granting attorney fees is reasonable under the circumstances, and in what amount.

{¶ 46} Father's second assignment of error is sustained in part and overruled in part. The finding of contempt as it relates to Mother based on Father's failure to pay Monica's loan is affirmed, as is any award for attorney fees predicated on that specific contemptuous conduct. However, the finding of contempt as it relates to Heather's bills and the award of attorney fees as it relates to that particular contempt finding is reversed.

{¶ 47} Judgment is affirmed as it relates to the interpretation of the divorce decree and contempt regarding Mother and Monica's loans, and judgment is reversed as it relates to the contempt for Heather's bills and related award of attorney fees. The cause is remanded for the trial court to determine whether attorney fees are appropriate as it relates to the contempt finding for failing to pay Monica's loans.

S. POWELL, P.J., and HENDRICKSON, J., concur.