[Cite as *Kranz v. Kranz*, 2014-Ohio-2899.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

JANELLE KRANZ,                                  :

    Plaintiff-Appellee,                    :         CASE NO.   CA2013-10-102

    - vs -                                     :         O P I N I O N
                                            6/30/2014

                                                   :

SCOTT KRANZ,                                    :

    Defendant-Appellant.                   :

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 06 DR 30268

Janelle Kranz, 799 Laurel Avenue, Hamilton, Ohio 45015, plaintiff-appellee, pro se

Brinkman & Associates, Karen R. Brinkman, 119 East Court Street, Suite 305, Cincinnati, Ohio 45202, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1}   Defendant-appellant, Scott Kranz (Father), appeals from a decision of the Warren County Court of Common Pleas, Domestic Relations Division, which denied his motion for change of custody of his two minor children and found him in contempt for failing to pay child support.  For the reasons discussed below, we affirm in part, reverse in part, and remand this matter for further proceedings.

## I. FACTS

**{¶ 2}** When Father and plaintiff-appellee, Janelle Kranz (Mother), divorced in December 2007, Mother was designated residential parent and legal custodian of the parties' two minor sons, Connor and Cooper, and Father was awarded parenting time and ordered to make monthly child support payments. Father has since filed multiple motions for change of custody. *See, e.g., Kranz v. Kranz,* 12th Dist. Warren No. CA2012-05-038, 2013-Ohio-1113 (*Kranz I).* Similarly, Mother has filed numerous motions for contempt. The present appeal arises out of the trial court's denial of Father's December 21, 2012 Motion for Change of Custody and its finding of contempt on Mother's February 26, 2013 Motion for Contempt for Father's failure to pay child support.[1]

**{¶ 3}** In his December 21, 2012 Motion for Change of custody, Father sought full custody of his two sons, claiming that there had been a change in circumstance. In support of his motion, Father argued (1) Mother had neglected and abused the children, (2) Mother had split the two children up and they were no longer living together or attending school in the same district, (3) the children were not doing well in school and had numerous detentions and suspensions while in Mother's care, (4) Mother was interfering with Father's parenting time, and (5) Mother had relocated without providing the trial court or Father with her new address. A hearing on Father's motion was set for January 25, 2013, at which time Mother did not appear. The trial court continued the matter and set it for a full hearing on February 26, 2013.

**{¶ 4}** Both parties appeared, without counsel, before the court on February 26, 2013. At this time Mother made an oral request for an in camera interview of Connor and filed a

---

1. Both Father's December 21, 2012 Motion for Change of Custody and Mother's February 26, 2013 Motion for Contempt were filed while Father's appeal of the denial of a prior motion for change of custody was pending in *Kranz I.* The present appeal does not revisit our holding in *Kranz I,* nor does it address the events that occurred pursuant to our remand in *Kranz I.* Rather, the present appeal is limited to the events surrounding Father's December 21, 2012 Motion for Change of Custody and Mother's February 26, 2013 Motion for Contempt.

written request for the same. She also filed a motion for contempt, asserting Father had not complied with the trial court's January 13, 2012 entry ordering him to make monthly child support payments and monthly payments to satisfy a debt that existed at the time of the parties' divorce ("divorce decree payments").[2] In response to Mother's request for an in camera interview of Connor, Father made an oral motion to have a Guardian Ad Litem (GAL) appointed to talk to the children. Father's request for a GAL was never ruled upon, and the hearing on Father's motion for change of custody proceeded. As not all testimony was heard that day, the hearing was continued to March 28, 2013. However, prior to the close of the February 26, 2013 hearing, the trial court informed Mother and Father that the only witnesses that could be called at the subsequent hearing on the motion for change of custody were those witnesses who were present and ready to testify on February 26, 2013. Both parties were instructed that no other witnesses could be subpoenaed.

{¶ 5} At the start of the March 28, 2013 hearing, Mother again requested an in camera interview of her oldest son, Connor. Father then made another oral motion to have a GAL appointed, claiming a statutory and legal right to have a GAL appointed for his child's in camera interview. The magistrate did not immediately rule on the motions, choosing to hear Father's evidence on the change of custody motion. Near the end of the hearing, the magistrate ruled that it would conduct an in camera interview of Connor, but indicated that it would not rule on Father's motion for a GAL until Father had the chance to consult his attorney.[3] The hearing was continued to April 25, 2013.

---

2. Pursuant to the parties' 2007 Decree of Divorce, Father was obligated to pay Mother $93,198.48. In its January 13, 2012 entry, the trial court found Father in contempt for failing to make payments on this debt, and it ordered Father to pay Mother $500 a month towards the outstanding balance of the debt until the obligation was paid in full.

3. During the course of the March 28, 2013 hearing, Father indicated that he had recently consulted an attorney who he hoped to retain to represent him on his motion for change of custody. However, no attorney entered an appearance on Father's behalf or appeared at the remaining hearings on Father's motion for change of custody.

{¶ 6}   At the April 25, 2013 hearing, the court heard evidence from Mother regarding Father's change of custody motion.  Father's previous motion for a GAL was not discussed or ruled on by the court at this hearing.  The hearing was again continued in-progress until May 16, 2013.

{¶ 7}   Prior to the May 16, 2013 hearing commencing, the court sent out a notice that it would conduct an in camera interview of Connor on May 10, 2013.  The court also provided notice that Mother's February 26, 2013 motion for contempt would be heard at the May 16, 2013 hearing.

{¶ 8}   At the start of the May 16, 2013 hearing, Father objected to the court's May 10, 2013 in camera interview of Connor, arguing that a GAL should have been present for the interview given Father's previous requests for the appointment of a GAL.[4]  The trial court overruled Father's objections and the hearing proceeded on Father's motion for change of custody.  Following closing arguments on the custody motion, the court heard testimony from Mother and Father regarding Mother's motion for contempt.

{¶ 9}   On June 7, 2013, the magistrate issued a decision denying Father's motion for change of custody and granting Mother's motion for contempt.  With respect to Father's motion, the court found a sufficient change in circumstance to address the motion for change of custody of the parties' minor children.  However, after considering the best interests of the children, including the factors set forth in R.C. 3109.04(F)(1), the court determined that "the harm likely to be caused by a change of environment outweighed the advantage of the change of the environment to the child[ren]."  The court therefore denied Father's motion for change of custody.

---

4. Pursuant to R.C. 3109.04(B)(2)(c) the only individuals permitted to be present during the in chambers interview are "the child, the child's attorney, the judge, any necessary court personnel, and, in the judge's discretion, the attorney of each parent."

{¶ 10} With respect to Mother's motion, the magistrate found Father in contempt for failing to comply with the trial court's January 13, 2012 order that he pay $500 a month to Mother to repay a debt established in the parties' decree of divorce and its January 13, 2012 order that he pay $736.75 in child support. The magistrate recommended Father be sentenced to 40 days in jail for failing to repay the divorce decree debt and 30 days in jail for failing to pay child support, but provided that Father could purge the finding of contempt by paying $3,100 before September 9, 2013.

{¶ 11} On June 21, 2013, Father filed objections to the magistrate's decision. Among his numerous objections, Father argued the magistrate "showed bias and prejudice along with violating [his] Constitutional rights for due process" by (1) not allowing him to subpoena witnesses, (2) denying and/or ignoring his multiple oral motions for a GAL, (3) conducting an in camera interview of Connor without having a GAL present, as requested by Father, and (4) finding him in contempt where Mother failed to present evidence that money was due and that Father failed to pay such sums.[5]

{¶ 12} On September 23, 2013, the trial court issued a decision overruling in part and sustaining in part Father's objections. With respect to the objections enumerated above, the trial court found no merit to Father's objections. The trial court determined the magistrate properly denied Father the right to subpoena witnesses after the first day of trial, as Father had not appeared with any witnesses on the first day of trial, had not requested the opportunity to subpoena witnesses in a timely fashion, and failed to proffer any evidence that the testimony of his proposed witnesses would be material to the case. The trial court also found that he magistrate properly denied Father's request to appoint a GAL as the request

---

5. Father attempted to supplement his objections on September 19, 2013. The trial court properly refused to consider such objections as the objections were not timely filed and Father failed to seek leave to file the objections out of time.

did not occur until the first day of the final hearing and the request was made after a previously appointed GAL had conducted a full investigation of the case and submitted a report on November 3, 2011. The court noted Father's request would have "delayed the remainder of the hearing by ninety days if it had been granted, causing evidence from the first day of the hearing to potentially grow stale." The trial court also found that the magistrate did not err by conducting an in camera interview of Connor without a GAL present as Father failed to raise the issue of appointing a GAL at the April 25, 2013 hearing and failed to follow up his oral motion with a written motion. Finally, with respect to Father's objection on the contempt finding, the trial court determined testimony from both Mother and Father sufficiently demonstrated Father's failure to make monthly child support payments and divorce decree payments. Accordingly, the trial court adopted the magistrate's decision denying Father's motion for change of custody and granting Mother's motion for contempt.

{¶ 13} Father timely appealed, raising four assignments of error.

## II. ANALYSIS

{¶ 14} Assignment of Error No. 1:

{¶ 15} THE TRIAL COURT ERRED BY ALLOWING CONNOR TO BE INTERVIEWED WITHOUT THE APPOINTMENT OF A GUARDIAN AD LITEM.

{¶ 16} In his first assignment of error, Father contends the trial court erred by failing to appoint a GAL in this case. Specifically, Father contends that once the trial court decided to conduct an in chambers interview of Connor, the court was obligated under R.C. 3109.04(B)(2)(a) to grant his request for the appointment of a GAL. Father further contends the trial court should have granted his request to have a new GAL appointed as the last report the court had from a GAL was from November 3, 2011, which was more than a year-and-a-half prior to the court's June 7, 2013 custody decision. Further, Father contends that since the GAL's involvement concluded in November 2011, circumstances had changed,

which necessitated a new investigation by a GAL.

{¶ 17} Generally, a trial court has broad discretion in deciding whether to appoint a GAL. *See Berger v. Feng*, 8th Dist. Cuyahoga No. 96513, 2012-Ohio-1041, ¶ 41. However, there are times when the appointment of a GAL is mandated by law. *See, e.g.,* R.C. 3109.04(B)(2)(a); R.C. 2151.281(A); Juv.R. 4(B). An appellate court reviews a trial court's decision denying or appointing a GAL for an abuse of discretion. *Chichanowicz v. Chichanowicz*, 3d Dist. Crawford No. 3-13-05, 2013-Ohio-5657, ¶ 65; *Perez v. Angell*, 10th Dist. Franklin No. 07AP-37, 2007-Ohio-4519, ¶ 13.

{¶ 18} R.C. 3109.04(B) provides that in allocating parental rights and responsibilities in any proceeding for modification of a prior order, the trial court must take into consideration the best interests of the child. "In determining the child's best interest for purposes of making its allocation of the parental rights and responsibilities for the care of the child and for purposes of resolving any issues related to the making of that allocation, the court, in its discretion, may and, upon the request of either party, shall interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation." R.C. 3109.04(B)(1). If a court conducts an in chambers interview, the court "upon the motion of either parent, *shall* appoint a guardian ad litem for the child." (Emphasis added.) R.C. 3109.04(B)(2)(a).

{¶ 19} R.C. 3109.04(B) is mandatory in nature, and the trial court must strictly follow its procedures. *McClanahan v. Willenbrink*, 12th Dist. Clermont No. CA99-11-111, 2000 WL 628229, *2 (May 15, 2000). "Once a motion is made to interview the child and appoint a guardian ad litem for the child, the trial court is required to conduct such an interview and appoint a guardian ad litem." *Id.* The failure to strictly follow the mandates of the statute results in reversible error, even where the trial court has made a thoughtful and conscientious decision in ruling on a party's motion for change of custody. *Id.*, citing *Badgett v. Badgett*,

120 Ohio App.3d 448, 452 (7th Dist.1997).

**{¶ 20}** In the present case, Mother made both a written and oral request for Connor to be interviewed "in camera" or, stated otherwise, "in chambers."[6] After Mother made such a request, Father unequivocally requested a GAL be appointed at the February 26, 2013 hearing. In fact, Father asked multiple times for a GAL to be appointed:

> [FATHER]: * * * *I'd like to make an Oral Motion to hire an Guardian Ad Litem* to talk to the children's counselors, talk to the - -
>
> THE COURT: - Well, we don't dictate to the counselors, the Guardian Ad Litems, how they're going to do their work.
>
> [FATHER]: Well, there's a superceedance 48 [sic] which outlines –
>
> THE COURT: -That's…that's…that's only directed [sic], it's not mandatory.
>
> [FATHER]: Correct.
>
> THE COURT: Okay, so anyway.
>
> [FATHER]: *Regardless, I'd like to make an Oral Motion to hire a Guardian Ad Litem.*
>
> THE COURT: Well, we had a Guardian Ad Litem before.
>
> [FATHER]: *Correct, I'd like to hire a new Guardian Ad Litem, Your Honor.*
>
> * * *
> [THE COURT]: Anything else at this time?
>
> [FATHER]: *I like* [sic] *to make an Oral Motion for a Guardian Ad Litem.*

(Emphasis added.) Father's motion was not expressly ruled upon by the court at the February 26, 2013 hearing.

---

6. "In camera means 'in chambers.'" *Reed v. Perry County Children's Services*, 5th Dist. Perry No. CA-437, 1993 WL 221260, *2 (June 8, 1993), citing *Barron's Law Dictionary* 227 (3d Ed.1991).

**{¶ 21}** Father again requested the appointment of a GAL at the March 28, 2013 hearing after Mother brought up her motion for an in camera interview of Connor. In making an oral motion for a GAL, Father referenced R.C. 3109.04(B), stating the following:

> [FATHER]: Okay, right, but what I'd like to quote is the law that if she is required…if she is allowed…the child to have an on camera interview, I do have the right…it says….well, actually shall…it says shall, not may, have the right to…for a Guardian Ad Lit…for a Guardian Ad Litem to be elected if you so choose to allow that then I am requesting that a Guardian Ad Litem be entered into the case because it does say that, that's not a (indiscernible).

Father was then informed by the court that if an in camera interview was going to be held, a GAL would be appointed:

> THE COURT: I normally would only interview the kids, in fact, especially in the middle of the hearing until the hearings done [sic].
>
> [FATHER]: But if…I have the right…if…if we could agree upon this from the law, that if…if you interview the child, I have the right to hire a GAL. And then if the GA-
>
> THE COURT: *Right, well, then if you come in and I….and I…if you say that then we would have a GAL appointed and go from there.*
>
> [FATHER]. And then the [GAL] would be able to review all the information if they –
>
> THE COURT: -Is that what you want to do?
>
> [FATHER]: I offered a G…I…I asked for GAL at the last hearing and was denied [sic].
>
> THE COURT: *Okay, but you are right. If I interview the children I do have to appoint a GAL.*

(Emphasis added.) The court and Father then engaged in further discussions about Father's desire to have an GAL appointed to the case, with the court explaining that appointing a GAL would delay proceedings and trigger further hearings. During this discussion, Father explicitly asked to have a GAL appointed more than three times. Nonetheless, the trial court

did not rule on Father's motion for a GAL. Rather, the court told Father it did not "plan" to interview Connor until all testimony related to the motion for change of custody was completed and that it would delay ruling on Father's request for a GAL until Father could consult with an attorney to determine whether he truly wished to have a GAL appointed. The court concluded the March 28, 2013 hearing by telling Father he would address the issue of a GAL, as well as who would serve as the GAL, at the next hearing, after Father consulted an attorney. However, the trial court neglected to rule on Father's motion at the April 25, 2013 hearing, and then proceeded to interview Connor on May 10, 2013 without appointing a GAL.

{¶ 22} We find the court's actions to be improper and in contravention of R.C. 3109.04(B)(2)(a). From the record it is clear that Father moved to have a GAL appointed, a remedy he was entitled to pursuant to the express language of R.C. 3109.04(B)(2)(a). Contrary to the trial court's ruling on Father's objections to the magistrate's decision, Father was not required to again raise, for a third time, the issue of a GAL at the April 25, 2012 hearing or file a written motion for a GAL. *See* Civ.R. 7(B)(1).[7] Father's request for the appointment of a GAL was stated with sufficient particularity to allow the trial court to determine that Father was seeking to have a GAL appointed in accordance with R.C. 3109.04(B)(2)(a).

{¶ 23} Father's first assignment of error is, therefore, sustained to the extent that the trial court erred by failing to appoint a GAL once it determined it would hold an in chambers interview of Connor. Accordingly, we reverse the trial court's denial of Father's motion for change of custody, and remand the matter for the appointment of a GAL, who shall

---

7. {a} Civ.R. 7(B)(1) provides, in relevant part, the following:

{b} An application to the court for an order shall be by motion which, *unless made during a hearing or a trial*, shall be made in writing. A motion, whether written or oral, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. (Emphasis added.)

investigate the children's situation and issue a report on the best interests of the children. Following the filing of the GAL's report with the trial court, a full hearing on Father's motion for change of custody shall be held.

{¶ 24} In light of our determination that Father was entitled to have a GAL appointed pursuant to R.C. 3109.04(B), we find the remaining issues presented by Father in his first assignment of error to be rendered moot.

{¶ 25} Assignment of Error No. 2:

{¶ 26} THE TRIAL COURT ERRED IN FAILING TO GRANT FATHER'S REQUEST TO CALL OR SUBPOENA WITNESSES AFTER THE COMMENCEMENT OF THE FIRST DAY OF TRIAL.

{¶ 27} In his second assignment of error, Father argues his due process rights were violated by the trial court's ruling that he could not subpoena or call any witnesses which were not present at the hearing on February 26, 2013. Father contends that the court's refusal to allow him to subpoena witnesses beyond the first day of the hearing limited his ability to introduce relevant evidence and, therefore, prejudiced his right to a fair hearing.

{¶ 28} Given our resolution of Father's first assignment of error, we now find Father's second assignment of error to be moot. *See* App.R. 12(A)(1)(c).

{¶ 29} Assignment of Error No. 3:

{¶ 30} THE COURT FAILED TO GRANT FATHER'S MOTION FOR A CHANGE OF CUSTODY IN VIOLATION OF THE OHIO REVISED CODE.

{¶ 31} In his third assignment of error, Father argues the trial court's decision denying his motion for change of custody was against the manifest weight of the evidence. Father contends it is in the children's best interest to name him as the residential parent and legal custodian.

{¶ 32} Based upon our resolution of Father's first assignment of error, we now find

Father's third assignment of error to be moot. *See* App.R. 12(A)(1)(c). Whether it is in the children's best interest for Father to be named the residential parent and legal custodian is an issue to be determined by the trial court on remand.

{¶ 33} Assignment of Error No. 4:

{¶ 34} THE COURT IMPROPERLY FOUND FATHER IN CONTEMPT FOR HIS FAILURE TO PAY SUPPORT AS ORDERED.

{¶ 35} In his fourth assignment of error, Father argues Mother failed to present evidence "that money was or wasn't owed by Father regarding child support." Father contends Mother's testimony was vague and did not establish "any amounts" allegedly owed by Father.

{¶ 36} "Contempt of court is defined as 'disobedience of an order of a court * * * which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Hetterick v. Hetterick*, 12th Dist. Brown No. CA2012-02-002, 2013-Ohio-15, ¶ 35, quoting *Sparks v. Sparks*, 12th Dist. Warren No. CA2010-10-096, 2011-Ohio-5746, ¶ 11. To support a contempt finding, the moving party must establish by clear and convincing evidence that a valid court order exists, that the offending party had knowledge of the order, and that the offending party violated such order. *Id.*; *Ossai-Charles v. Charles*, 12th Dist. Warren Nos. CA2010-12-129 and CA2011-01-007, 2011-Ohio-3766, ¶ 30.

{¶ 37} Father was found to be in civil contempt for his failure to make monthly child support payments and divorce decree payments. "The distinction between civil and criminal contempt depends upon the character and purpose of the sanctions imposed." *Mackowiak v. Mackowiak*, 12th Dist. Fayette No. CA2010-04-009, 2011-Ohio-3013, ¶ 38. Where the sanctions imposed are primarily for reasons benefiting the complainant and are remedial and coercive in nature, the contempt is civil in nature. *Id.* at ¶ 39. "Prison sentences imposed as

punishment for civil contempt are conditional, and the contemnor is said to carry the keys of his prison in his own pocket due to the fact that his compliance with the court order secures his freedom." *Whittington v. Whittington*, 12th Dist. Warren No. CA2011-06-065, 2012-Ohio-1682, ¶ 23.

{¶ 38} A trial court's finding of civil contempt will not be disturbed on appeal absent an abuse of discretion. *Mackowiak* at ¶ 45. An abuse of discretion constitutes more than an error of law or judgment; it requires a finding that the trial court acted unreasonably, arbitrarily, or unconscionably. *Hetterick* at ¶ 37.

{¶ 39} We find that the trial court did not abuse its discretion in finding Father in contempt as Mother introduced evidence that Father had not complied with the court's January 13, 2012 order that he pay $500 a month towards the outstanding debt initially established in the parties' divorce decree and pay $736.75 a month in child support. Mother testified Father has not made any payments pursuant to the January 13, 2012 order. Father, on the other hand, testified he could not "recall" whether he made the ordered payments, whether such payments were made on time, or whether the payments were made in full. However, Father had previously admitted he was "upside down financially" and had missed some payments. Given the parties' testimony, we find that Mother presented clear and convincing evidence that the January 13, 2012 order requiring Father to make monthly child support payments and divorce decree payments existed, that Father had knowledge of such order, and that he violated the order by failing to make payments to Mother in accordance with the terms of the order. *See Hetterick* at ¶ 38.

{¶ 40} We therefore overrule Father's fourth assignment of error and affirm the trial court's finding of contempt.

## CONCLUSION

{¶ 41} Judgment is affirmed in part, reversed in part, and this matter remanded for the

- 13 -

appointment of a guardian ad litem and a full hearing on Father's motion for change of custody.

S. POWELL and M. POWELL, JJ., concur.