[Cite as *Vogel v. Mestemaker*, 2016-Ohio-7244.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**DARKE COUNTY**

| | | |
|---|---|---|
| CHRISTY A. VOGEL, fka MESTEMAKER | : | |
| | : | |
| | : | Appellate Case Nos. 2015-CA-20 and |
| Plaintiff-Appellee/Cross-Appellant | : | 2015-CA-22 |
| | : | |
| | : | Trial Court Case No. 06DIS63221 |
| v. | : | |
| | : | (Appeal from Domestic Relations |
| RICHARD A. MESTEMAKER | : | Court) |
| | : | |
| Defendant-Appellant/Cross-Appellee | | |

. . . . . . . . . .

O P I N I O N

Rendered on the 7th day of October, 2016.

. . . . . . . . . .

JAY M. LOPEZ, Atty. Reg. No. 0080819, 18 East Water Street, Troy, Ohio 45373
    Attorney for Plaintiff-Appellee/Cross-Appellant

QUENTIN M. DERRYBERRY, II, Atty. Reg. No. 0024106, 15 Willipie Street, No. 220, P.O. Box 2056, Wapakoneta, Ohio 45895
    Attorney for Defendant-Appellant/Cross-Appellee

. . . . . . . . . . . .

HALL, J.

{¶ 1} Richard Mestemaker appeals from the trial court's entries adopting a

magistrate's decision regarding reallocation of parental rights and entering judgment designating his former wife, Christy Vogel, as residential parent of the younger of their two children. Richard also appeals from a separate judgment entry finding both parties in civil contempt for failing to comply with parenting-time orders. In a cross appeal, Christy likewise appeals from the trial court's entry finding her in contempt.

{¶ 2} The record reflects that Richard and Christy divorced in 2006. At that time, Christy was designated the residential parent of their two minor children. In 2010, Richard became the residential parent. In 2012, Christy moved to Tennessee. Thereafter, in July 2014, she moved for reallocation of parental rights, seeking to be named the residential parent of both children. She later modified her request, seeking to be named the residential parent of only the younger child. The matter proceeded to a December 2014 hearing before a magistrate. The evidence included testimony from Richard, Christy, Christy's mother, and a guardian ad litem, who recommended sustaining Christy's motion. The magistrate also spoke with both children in camera. At the time of the hearing, the younger child was 12 years old and wanted to live with Christy. The older child was 16 years old and wanted to remain with Richard. In January 2015, the magistrate filed a decision and order recommending that Christy be designated the younger child's residential parent. (Doc. #103).

{¶ 3} Both parties filed objections to the magistrate's decision. Christy's objections, which are not at issue here, primarily addressed child-support computation. In his objections, Richard asserted that the evidence did not support a finding of a change in circumstances since the prior order designating him the residential parent and did not support a finding that designating Christy as the younger child's residential parent would

be in the child's best interest. (Doc. #123). In conjunction with his objections, on May 7, 2015, approximately five months after the evidentiary hearing, Richard separately filed a motion to appoint counsel to represent the younger child. (Doc. #120). In support of that motion, he attached a letter from the younger child in which the child expressed a change of heart and a desire to remain with him. Richard argued that the guardian ad litem's opinion conflicted with the child's new wishes and, therefore, that counsel should be appointed to represent the child.

{¶ 4} The trial court subsequently filed a May 14, 2015 "Judgment Entry- Objection to Magistrate's Decision." (Doc. #124). Therein, the trial court acknowledged that the parties had filed "objections and supplemental pleadings." (*Id.* at 1). It proceeded to overrule Christy's objections regarding child support. It then turned to Richard's argument about the child's recent letter. It found the letter inadmissible in that it attempted to introduce new evidence and that it was excluded under R.C. 3109.04(B)(3) which states: "No person shall obtain * * * from a child a written or recorded statement or affidavit setting forth the child's wishes and concerns regarding the allocation of parental rights and responsibilities concerning the child. No court, in determining the child's best interest for purposes of making its allocation of the parental rights and responsibilities for the care of the child or for purposes of resolving any issues related to the making of that allocation, shall accept or consider a written or recorded statement or affidavit that purports to set forth the child's wishes and concerns regarding those matters." The trial court also declined to appoint counsel to represent the child. (*Id.*). Finally, the trial court indicated that it had reviewed the magistrate's findings of fact and conclusions of law along with a transcript of the hearing and exhibits. The trial court adopted the magistrate's decision as

its own. (*Id.* at 3).

{¶ 5} Richard appealed from the trial court's May 14, 2015 ruling. We dismissed his appeal for lack of an appealable order due to the trial court's failure to issue a separate judgment beyond adopting the magistrate's decision. Richard then again unsuccessfully sought to have counsel appointed for the younger child. (Doc. # 150, 152). Thereafter, the trial court filed a September 4, 2015 judgment entry in which it expressly entered a detailed judgment in favor of Christy on her motion for reallocation of parental rights, designating her as the younger child's residential parent and legal custodian. (Doc. #162). Richard has appealed from that judgment.

With regard to the contempt issue, the record reflects that Christy filed a June 1, 2015 motion that, inter alia, sought a show-cause order directed to Richard regarding his alleged failure to facilitate her summer parenting time. (Doc. #127). She filed a second such motion against Richard on June 15, 2015. (Doc. #135). That same day, the trial court filed a show-cause order against Richard and set the matter for a hearing on June 17, 2015. (Doc. #136-138). The next relevant entry in the trial court's docket is a June 22, 2015 "Agreed Judgment Entry for Summer 2015 Companionship." (Doc. #148). It states that the parties had appeared before the trial court and had reached an agreement regarding Christy's summer parenting-time schedule. The trial court adopted the agreement as a court order. (*Id.*). Based on the content of that agreed order, it appears that no show-cause hearing regarding Richard's allegedly contemptuous behavior occurred. One month later, the trial court filed a July 22, 2015 "Memorialization of Proceedings." (Doc. #151). That filing attempted to clarify ongoing confusion or ambiguity regarding summer parenting time. Although the trial court noted that the parties had

declined to have a record made, it appears from the content of the trial court's order that a conference or proceeding of some type occurred in court. (*Id.* at 1-2). No motions were addressed at that time however. (*Id.*).

**{¶ 6}** On August 25, 2015, Richard filed his own motion and supporting affidavit seeking to have Christy held in contempt. (Doc. #155, 156). The motion alleged that Christy had deprived him of communication and companionship with the younger child (who by then was in Tennessee with Christy) primarily by obtaining an ex parte TPO against him from a Tennessee court. According to Richard's motion, the TPO prohibited him from having any contact or communication with Christy or the child. Richard asserted that Christy's sworn statements in support of the TPO were false, misleading, and intended to interfere with his rights under the trial court's existing orders. On August 27, 2015, the trial court issued a show-cause order and directed Christy to appear for a September 4, 2015 contempt hearing to address Richard's allegations. (Doc. #158).

**{¶ 7}** At the outset of the September 4, 2015 hearing, the trial court stated that the parties were before it on *two* matters, to wit: "an old motion from June filed by the first petitioner [Christy] and then more recent motions by the second petitioner [Richard] regarding compliance with the Court's prior orders on parenting time." (September 4, 2015 Hearing Tr. at 5). The trial court then asked counsel for Richard and Christy what relief they were seeking. Each attorney responded that the relief sought included a finding that the other party was in contempt. (*Id.* at 6, 8). The trial court proceeded to hear testimony from Richard and Christy regarding various perceived violations regarding parenting time and communication with the child. The only witnesses at the hearing were Richard, Christy, and their older child. At the conclusion of the hearing, the trial court ruled

orally from the bench. It found both parties in civil contempt. (*Id.* at 79). The trial court also memorialized its contempt findings in a September 4, 2015 judgment entry. (Doc. #163). As a sanction, it imposed three-day jail sentences and $250 fines on both parties. It suspended these penalties on condition of future compliance with parenting-time orders and the split payment of court costs. (*Id.*). Richard and Christy both have appealed from the trial court's contempt ruling.

{¶ 8} In his first assignment of error, Richard contends the trial court erred in failing "to address and consider the arguments and citations" in his objections to the magistrate's decision on Christy's motion to reallocate parental rights. The essence of his argument is that the trial court did not properly engage in an independent review of the magistrate's decision, as required by Civ.R. 53(D)(4)(d), because it did not explicitly address and resolve the issues raised in his objections. (Appellant's brief at 10-12).

{¶ 9} Upon review, we find Richard's argument to be unpersuasive. The trial court did not ignore his objections. To the contrary, the trial court explicitly recognized the objections in its May 14, 2015 ruling adopting the magistrate's decision and in its September 4, 2015 judgment entry on Christy's motion to reallocate parental rights. The first of those two rulings also makes clear that the trial court engaged in an independent review of the record, including the transcripts and exhibits, before adopting the magistrate's findings of fact and conclusions of law as its own. The "better practice" is "for a trial court to individually itemize and address objections separately[.]" *Alessio v. Alessio*, 10th Dist. Franklin No. 05AP-988, 2006-Ohio-2447, ¶ 36. A trial court's failure to specifically address an objection, however, does not necessarily mean that it failed to conduct an independent review, particularly where it has considered the objection, a

transcript, and the file. *Id.*; *see also Phillips v. Phillips*, 2014-Ohio-5439, 25 N.E.3d 371, ¶ 28 (5th Dist.) ("While the trial court never expressly addressed each and every objection, it is presumed that the trial court, sub silentio, overruled the objections when it proceeded to enter judgment disposing of the objections."). We see no basis for concluding that the trial court failed to conduct an independent review of the magistrate's decision. Richard's first assignment of error is overruled.

{¶ 10} In his second assignment of error, Richard contends the trial court erred in addressing his motion to appoint counsel for the parties' younger child, and the child's letter expressing a change of heart, in the context of adopting the magistrate's decision on Christy's motion to reallocate parental rights. As we understand it, Richard's argument is that his motion for the appointment of counsel and the accompanying letter had nothing to do with the magistrate's earlier reallocation decision and his objections to that decision. Richard suggests that the trial court was confused when it adopted the magistrate's findings of fact and conclusions of law and that it "lacked sufficient overall understanding of the issues to enter Judgment pursuant to Ohio Civ. R. 53(D)(4)(a) and (d)." (Appellant's brief at 12).

{¶ 11} We find Richard's argument to be unpersuasive for at least two reasons. First, we will not presume that the trial court was confused or lacked an understanding of the issues simply because it ruled on his motion for the appointment of counsel while also adopting the magistrate's decision on the reallocation-of-parental-rights issue. At the outset of its May 14, 2015 ruling, the trial court noted that the parties had filed "objections" to the magistrate's decision *and* "supplemental pleadings." (Doc. #124 at 1). It is reasonable to infer that the trial court's reference to "supplemental pleadings"

encompassed Richard's motion to appoint counsel for the child, which the trial court seemingly distinguished from his "objections." Second, the trial court could not possibly have been confused when it later entered its own September 4, 2015 independent judgment on Christy's motion to reallocate parental rights. (Doc. #162). Shortly before that ruling, Richard filed a July 22, 2015 "Motion to Consider/Reconsider Motion to Appoint Counsel for Child." (Doc. #150). Therein, he made clear that his motion to appoint counsel was distinct from his objections to the magistrate's decision on the reallocation of parental rights. (*Id.*). The trial court addressed and overruled Richard's July 22, 2015 motion on July 24, 2015. (Doc. # 152). Therefore, we see no basis for concluding that the trial court was confused or was acting under any misapprehension on September 4, 2015 when it entered judgment in Christy's favor on her motion to reallocate parental rights. Accordingly, Richard's second assignment of error is overruled.

{¶ 12} In his third assignment of error, Richard contends the trial court erred in finding him in contempt. He argues that the September 4, 2015 contempt hearing was held to address his August 25, 2015 motion to hold Christy in contempt. (Appellant's brief at 14). Richard asserts that no contempt motion was pending against him at the time of the hearing. (*Id.*). He further asserts that during the September 4, 2015 contempt hearing, "there was no claim or call by the Court indicating that a contempt finding against [him was] under consideration." (*Id.* at 15-16). Richard also argues that Christy's two June 2015 show-cause motions directed toward his alleged contempt lacked proof of service on him. He admits being personally served, however, just prior to a June 17, 2015 pretrial conference. (*Id.* at 16). Nevertheless, he maintains that the June 22, 2015 agreed judgment entry referenced above "was read upon the record and included that all pending

motions pertaining to contempt were to be dismissed." (*Id.* at 17). For the foregoing reasons, Richard contends the trial court erred in finding him in contempt at the conclusion of the September 4, 2015 hearing.

{¶ 13} Upon review, we find Richard's assignment of error to be unpersuasive. He acknowledges that Christy filed two show-cause motions in June 2015 seeking to have him held in contempt for failing to facilitate her summer parenting time. (Doc. #127, 135). Even if those motions lacked proper proof of service, Richard admits being served with them personally that same month. Contrary to his argument, we also see nothing in the record in connection with the June 22, 2015 agreed entry reflecting dismissal of any contempt motions. (Doc. # 148). Finally, the transcript of the September 4, 2015 contempt hearing belies his claim that the trial court never indicated that a contempt finding against him was under consideration. At the outset of the hearing, the trial court stated that the parties were before the court on competing contempt issues. (September 4, 2015 Hearing Tr. at 5). Richard's counsel registered no surprise and made no objection to this statement. The trial court then proceeded to ask both attorneys what relief the parties wanted. Each attorney responded that the relief sought included a finding that the other party was in contempt. (*Id.* at 6, 8). Again, Richard's attorney made no objection when Christy's counsel requested this relief. The trial court then heard testimony from Richard and Christy regarding allegedly contemptuous acts committed by the other. Once again, Richard's attorney did not object or assert that the hearing was limited to Christy's alleged contempt.

{¶ 14} Based on our review of the record, we conclude that Christy's June 2015 motions remained pending and, in any event, that Richard received both notice of his

alleged contempt at the outset of the September 4, 2015 hearing and an opportunity to be heard regarding his conduct. By failing to raise any objection, he implicitly consented to his alleged contempt being tried on that date. Under these circumstances, we reject his argument that the trial court improperly proceeded to make a contempt finding against him. Richard's third assignment of error is overruled.

{¶ 15} In her sole assignment of error on cross appeal, Christy challenges the trial court's judgment finding her in contempt. She argues that Richard's August 25, 2015 motion sought a contempt finding based solely on her obtaining an ex parte TPO in Tennessee. Christy maintains that Richard's motion constituted an improper attempt to litigate the TPO issue in the wrong jurisdiction. Christy additionally argues that the trial court deprived her of due process by vaguely finding her in contempt for violating unspecified "prior orders involving parenting time under circumstances which prevented the timely exchange of [the child] for purposes of residential custody or summer parenting time." (Doc. #163 at 1). Christy asserts that Richard's motion did not give her notice of the need to defend against anything other than contempt allegations premised on the TPO.

{¶ 16} Upon review, we find Christy's assignment of error to be persuasive, albeit based on reasoning somewhat different than hers. As a threshold matter, we note that Richard's August 25, 2015 contempt motion is primarily premised on her obtaining an ex parte TPO in Tennessee on August 13, 2015, although the motion arguably also encompassed an alleged lack of communication between Richard and the child between August 6, 2015 (when Christy took the child back to Tennessee from Ohio) and August 13, 2015 (when Christy obtained the TPO). (*See* Motion, Doc. #155, and Supporting

Affidavit, Doc. #156). When Richard's counsel attempted to question him about other issues, Christy's counsel objected to the scope of the hearing. (*See, e.g.*, September 4, 2015 Transcript at 23). With regard to the TPO, Christy's counsel argued that the trial court lacked authority to address it, as it was a matter for the Tennessee court. (*Id.* at 73).

{¶ 17} In its oral ruling from the bench, the trial court notably *did not* find Christy in contempt based on anything related to her obtaining the TPO. (*Id.* at 87). Nor did the trial court find Christy in contempt based on any "lack of communication" between Richard and the child between August 6, 2015 and August 13, 2015. Rather, the trial court's only specific recitation of facts supporting its contempt finding against both parties is as follows:

I mean, Mrs. Vogel, you're in contempt of [the] Court's *prior orders with regard to failing parenting exchange. I don't find your denial that you didn't cut off his summer visitation credible.* Yeah, you denied it. I don't find it credible when a Deputy Sheriff's out there trying to mediate, as they often do, the exchange that didn't happen. And it's no excuse, Mr. Mestemaker, for you to not give visitation—I'm sorry—parenting exchange to your ex-wife because you think you're going to get choked out of or cheated out of summer visitation.

So you were wrong when you relied upon the fact that she was going to be wrong, and I don't find that that half exchange was the way you expected it to happen. I rely upon, essentially, the police officer trying to come out and mediate. So what you thought you were doing isn't, in fact, what was going on.

So you're both in contempt of the orders * * *.

(Emphasis added) (*Id.* at 79).

{¶ 18} From our review of the record we harbor no doubt that multiple actions initiated by Christy in this case are contemptuous. The trial court did not find her credible when she testified she never told Richard she would not return the child to Richard for visitation at the time of the failed May 29, 2015 exchange. She failed, without notice, to appear with the child at the exchange point at a designated service station between Ohio and Tennessee on July 5, 2015, as ordered by the Agreed Judgment Entry filed June 22, 2015. There is abundant evidence from which one could believe that she did not facilitate communication between the child and her father between August 6th and August 13th, 2015 when the father and the child's sister were unable to contact the child by phone. In fact, Christy failed to provide the child's new cell phone number until she was asked for it under oath at the September 4, 2015 hearing. Christy also appeared at Richard's house on August 6, 2017, apparently unannounced, and took the child back to Tennessee with only the child's note left on Richard's counter.

{¶ 19} Nevertheless, we are constrained by the trial court's finding with regard to the contemptuous act Christy committed which, we conclude from the context of the trial court's remarks, was only predicated on a May 29, 2015 incident involving an attempted parenting-time exchange. On that occasion, Christy went to Richard's residence, accompanied by a deputy sheriff, to obtain the younger child for court-ordered parenting time. According to Richard, he refused to give Christy the child because she would not agree to return the child to him days later, as required by the same court order. (*Id.* at 19-22; 33-34). For her part, Christy agreed that she went to Richard's house with a deputy

sheriff to pick up the child for her parenting time. But she denied telling Richard that she would not return the child to him. (*Id.* at 44-45).

**{¶ 20}** Because the record reflects no other parenting-time exchange involving the participation of a deputy sheriff and a denial by Christy, we conclude that the trial court's contempt finding against both parties was premised on the foregoing incident. Such a conclusion is further supported by remarks made during Christy's counsel's closing argument. When counsel asserted that "[t]here is no basis to hold mother in contempt," the trial court responded: "Did she not tell the Sheriff that she wasn't going to give summer visitation to the father?" (*Id.* at 73). Although counsel then cited Christy's denial, the trial court's oral ruling found her denial not credible.

**{¶ 21}** Even if we assume, arguendo, that Richard's August 25, 2015 contempt motion was broad enough to encompass the May 29, 2015 incident, the trial court erred in finding Christy in contempt based on her role in that incident. Christy's statement that she would not return the child to Richard was prospective. When she made the statement, she was not yet required to turn over the child because the appointed day had not arrived. In essence, Richard then engaged in a contemptuous act based on Christy's threat that she would do likewise in the future. She never got an opportunity to do so, however, because Richard did not give her the child. Therefore, she never disobeyed the court order. " 'There is no doctrine of anticipatory contempt in our legal system. An adjudication of contempt relates to past conduct, not prospective conduct. Prior to the end of the time for performance, any alleged failure to perform is speculation and cannot be the basis for a contempt finding.' " (Internal citations omitted.). *Hetterick v. Hetterick*, 12th Dist. Brown No. 2012-02-002, 2013-Ohio-15, ¶ 42, quoting *Kirk v. Kirk*, 172 Ohio App.3d 404, 2007-

Ohio-3140, 875 N.E.2d 125, ¶ 5 (3rd Dist.).

{¶ 22} Here Christy only prospectively failed to satisfy her obligation to return the child to Richard. His failure to transfer the child to her prevented her from engaging in contemptuous conduct at the required time for her performance. Because Christy did not in fact fail to return the child to Richard in accordance with the court order, the trial court erred in finding her in contempt. Christy's assignment of error is sustained.

{¶ 23} Based on the reasoning set forth above, we affirm the trial court's September 4, 2015 judgment in favor of Christy on her motion for reallocation of parental rights. (Doc. #162). We affirm in part and reverse in part the trial court's September 4, 2015 judgment finding Richard and Christy in contempt. (Doc. #163). That judgment is affirmed with regard to the contempt finding against Richard but reversed and vacated as to the contempt finding against Christy.

. . . . . . . . . . . . .

WELBAUM, J., concurs.

FROELICH, J., concurring in part and dissenting in part:

{¶ 24} I agree with the majority's decision to affirm the trial court's judgment of contempt with respect to Richard, but I disagree with the reversal of the finding of contempt as to Christy.

{¶ 25} The trial court expressly stated that "both parties ha[d] wilfully [sic] failed to comply with prior orders involving parenting time."   The court also observed, with respect to both parties, that they had "poor communication" and "continuing acrimony" beyond what would normally be expected following a divorce.   The court described "the parties' wilful [sic] non-compliance" with the court's orders as "approaching the point where its

purpose seems to be primarily to frustrate the judicial process and to publically [sic] disregard court orders," although still within the realm of "civil, indirect contempt." Further, the court characterized the parties as frustrating and manipulating one another. To address these issues, the court stated that its "remedy" – finding both parties in contempt -- was "designed with the purpose of modifying the parties' behavior toward each other."

{¶ 26} The majority opinion "harbor[s] no doubt that multiple actions initiated by Christy in this case are contemptuous," and it cites several examples, including her failure to facilitate communication between the younger daughter and Richard during part of August 2015 and Christy's failure or refusal to provide the child's new cell phone number to Richard. It also acknowledges that Richard's August 25, 2015 motion for contempt "arguably * * * encompassed an alleged lack of communication between Richard and the child" during this period.

{¶ 27} The majority concludes that the trial court's finding of contempt was based solely on Christy's threat to withhold future parenting time, and therefore examined only whether Christy was in contempt for the single incident on May 29, 2015, where she threatened not to return the child on a future date. While I agree with the majority's conclusion that Christy could not be held in contempt for threatening to commit a future violation of the parties' parenting agreement, I disagree that this incident was the only basis for the trial court's finding of contempt.

{¶ 28} The parties' agreement with respect to parenting time that summer, as stated in the Memorialization of Proceedings filed by the trial court on July 22, 2015 amid ongoing disputes between the parties, was that the younger child would return from

Richard's home to Christy's home in Tennessee "on the Sunday prior to the beginning of school," and that this exchange would be effectuated by the parties' meeting at Lebanon Junction on Interstate 75 (in Kentucky). Richard testified that Christy picked the child up from his home on August 6, 2015, without any notice to him; he came home and found a note from the child on the counter. Christy claimed that these actions were necessary because school was about to start in Tennessee and Richard had failed to meet her the previous Sunday, although it is not clear if or when Christy had accurately communicated with Richard about the start of school, especially in light of her attempt to define the end of summer break in terms of the start of fall activities, rather than the actual start of school. Richard was unable to communicate with the child for several weeks after this event.

{¶ 29} At the hearing, the court scolded both parties for acting like children and putting their own "acrimony" ahead of the children's interests. The court criticized Christy for attempting to prioritize school extracurricular activities over Richard's parenting time in the summer of 2015. It also criticized her for failing to "tak[e] the high road" in communicating with Richard clearly and civilly about when school began before showing up to take the child while he was not at home. The trial court found Christy in contempt "with regard to failing parenting exchange," and it found her explanation of the circumstances surrounding her attempt to "cut off [Richard's] summer visitation" lacking in credibility. These findings supported the trial court's finding of contempt.

{¶ 30} Furthermore, as discussed above, the court's judgment detailed an extensive history of both parties' violating its orders. It also found that the documents Christy filed in Tennessee in August 2015 in support of a temporary protection order against Richard contained allegations which ignored her own "culpability in prompting the

behavior of which she complains" and demonstrated her "desire to manipulate circumstances in an attempt to frustrate this Court's prior orders pertaining to parenting time."

{¶ 31} An appellate court reviews a finding of contempt for an abuse of discretion. *Obara v. Obara*, 2d Dist. Montgomery No. 26668, 2016-Ohio-5651, ¶ 19. "An 'abuse of discretion' implies that the trial court's attitude was unreasonable, arbitrary or unconscionable." *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). In light of the evidence that Christy failed to facilitate communication between her younger child and Richard while the child was in Tennessee during August 2015 and did not herself make reasonable efforts to communicate with him about the exchanges of the children that summer, I would find no abuse of discretion in the trial court's determination that Christy was in contempt of the court's orders.

. . . . . . . . . .

Copies mailed to:

Jay M. Lopez
Quentin M. Derryberry, II
Hon. Jonathan P. Hein