[Cite as *Davis v. Davis*, 2022-Ohio-3179.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| KIM M. DAVIS, | : | |
| Appellee, | : | CASE NO. CA2021-11-139 |
| | : | O P I N I O N |
| - vs - | | 9/12/2022 |
| | : | |
| THEODORE K. DAVIS, | : | |
| Appellant. | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR 2013-12-1277

The Lampe Law Office, LLC, and Stephen J. Otte, for appellee.

Edwin L. Vardiman, Jr., for appellant.

**PIPER, J.**

{¶ 1} Appellant, Theodore Davis ("Davis"), appeals from the decision of the Butler County Court of Common Pleas, Domestic Relations Division, finding him in contempt for failing to pay spousal support to appellee, Kim Davis.

{¶ 2} Davis and Kim married for the second time on August 7, 2002. Kim filed for divorce on December 17, 2013, and the matter proceeded to a final contested divorce

hearing. Following the hearing, the trial court entered a Decree of Divorce wherein it ordered Davis to pay Kim spousal support in the amount of $2,100 per month.

{¶ 3} Thereafter, in December 2014, Davis and Kim entered into a mediation agreement which was adopted by the trial court in an agreed entry ("Agreed Entry"). The Agreed Entry modified the spousal support terms from the Decree of Divorce and lowered Davis's spousal support obligation to $1,350 per month. The Agreed Entry also amended the Decree of Divorce's provisions concerning Davis's life insurance, and indicated Kim was entitled to 100 percent of Davis's life insurance benefits with the Federal Employee Group Life Insurance ("FEGLI"). As such, the trial court ordered Davis to "immediately execute a new beneficiary designation form naming [Kim] as sole beneficiary" of his FEGLI policy.

{¶ 4} Thereafter, the parties filed several motions to modify the amount of spousal support that Davis pays Kim. Davis also disputed the portion of the Agreed Entry pertaining to Kim's entitlement to his FEGLI benefits. The matter proceeded to a hearing, and in a decision and order dated January 19, 2018, the trial court determined that the spousal support award contained in the Agreed Entry of $1,350 per month remained appropriate.

{¶ 5} Regarding the FEGLI policy, the trial court found that Davis had not maintained the $250,000 life insurance policy as ordered in the Agreed Entry and directed Davis to assign $250,000 in full benefit life insurance through FEGLI to Kim, in a form consistent with the agreement contained in the Agreed Entry, within 45 days of the decision and order. Upon appropriate documentation of the assignment of the FEGLI benefits, the trial court indicated the amount of spousal support paid by Davis would be reduced to $1,300 per month.

{¶ 6} Davis timely appealed from the trial court's decision. On appeal, this court upheld the trial court's decision in its entirety, and specifically found that the trial court did not abuse its discretion in its spousal support determination and did not err in assigning the

FEGLI benefits to Kim. *See Davis v. Davis*, 12th Dist. Butler No. CA2018-01-018, 2018-Ohio-4935, ¶ 15, 18-22, *discretionary appeal denied*, 155 Ohio St.3d 1414, 2019-Ohio-1205.

{¶ 7} Thereafter, Kim moved the trial court to find Davis in contempt for failing to pay Kim's attorney fees and costs pursuant to the trial court's January 19, 2018 decision. In that decision, Davis was ordered to pay a total of $10,220 in fees and costs and was instructed to pay the fees directly to Kim at a rate of $500.00 per month. In February 2019, the parties reached an agreement resolving Kim's motion for contempt. Pursuant to their agreement, Davis agreed to pay a lump sum of $5,000 directly to Kim's counsel and the remaining $5,200 would be liquidated and added to his spousal support obligation as arrears. An additional $200 per month would be added to Davis's spousal support obligation until the $5,200 was satisfied. In exchange, Kim agreed to dismiss her motion for contempt. The trial court issued an order consistent with the parties' agreement.

{¶ 8} Over the following year, Davis and Kim filed numerous motions and filings with the trial court. Davis also filed related lawsuits against Kim and her counsel in other Ohio counties and in federal court, as well as two federal lawsuits against then-presiding Judge Barbara Carter. Davis additionally filed four affidavits of disqualification with the Ohio Supreme Court, each attempting to disqualify Judge Carter from presiding over the trial court proceedings. Notably, the four affidavits were determined to be meritless and the federal lawsuits involving Judge Carter were ultimately dismissed.

{¶ 9} In March 2020, Davis filed a fifth affidavit to disqualify Judge Carter from the case. At that point, Judge Carter voluntarily recused herself to "stop delays in hearing the parties' motions." Thereafter, on April 2, 2020, a visiting judge was appointed to preside over the case.

{¶ 10} Over the following months, the case remained highly contentious. Relevant

to the instant appeal, on January 6, 2021, Kim moved the trial court to order Davis to show cause why he should not be held in contempt of the court's orders. Specifically, Kim alleged Davis should be held in contempt for failing to pay spousal support in November and December of 2020, resulting in an arrearage in the amount of $3,162, and for failing to maintain his FEGLI policy at $250,000, as instructed by the Agreed Entry.[1]

{¶ 11} A hearing was scheduled for February 8, 2021, however, that hearing was continued due to lack of service on Davis. The hearing was continued a second time on March 29, 2021 for the same reason. On May 3, 2021, the trial court held a pretrial telephone conference with Davis's counsel. Neither Davis nor Kim personally appeared, and the trial court was informed that Davis denied service. A that time, the trial court instructed Davis "to go to the Clerk of Courts to be served with a copy of the motions." The court indicated it would email a copy of the motions to Davis's counsel and ordered the parties to provide updated residential addresses and phone numbers to the court.

{¶ 12} On June 1, 2021, the trial court held another pretrial telephone conference, at which Kim and Davis's counsel appeared. Davis did not personally appear and could not be reached by telephone. At that time, the trial court ordered Davis's counsel to "file on or before June 7, 2021 an Acceptance of Service for [Davis] understanding of his legal rights and possible sanctions of contempt motions filed."

{¶ 13} The matter proceeded to another pretrial conference on August 10, 2021, which the trial court summarized in an all purpose entry. Kim and her counsel appeared in person. According to the trial court's entry, Davis and his counsel denied knowledge of the hearing that day but were conferenced into the hearing by phone. During the call, and on

---

1. Although filed in a single document, Kim's motion is designated as three separate motions, including a C13 – Motion to Show Cause; a C1 – Show Cause – Agreed Entry; and a G56 – Motion for Attorney Fees/Costs.

the record, Davis denied receiving Kim's motions, and gave his counsel authorization to accept service of Kim's motions on his behalf. Davis also updated his residential address and acknowledged the new hearing date of September 24, 2021. Thereafter, on September 2, 2021, Davis's counsel filed an "Amended Notice of Service of Motions Filed on 1/6/2021," in which Davis confirmed service of Kim's motions.

{¶ 14} The matter proceeded to a final hearing. Both parties appeared and were represented by counsel. At the beginning of the hearing, Davis indicated he understood what motions the hearing pertained to, and although his counsel acknowledged receipt of the motions, Davis had not received or seen a copy of the summons through his counsel. At that time, the trial court discussed the various notices that pertain to a finding of contempt, including the possible penalties. Davis indicated he understood and did not wish to speak with his counsel privately before proceeding with the hearing.

{¶ 15} During the hearing, the court heard testimony from both parties. After considering their testimony and the exhibits, as well as the historical records of the case, the trial court found that Davis was in contempt of the Agreed Entry by failing to pay the $1,350 per month in spousal support to Kim. At the time of the hearing, Davis owed $15,838 in arrears plus administrative fees of $1,043.37. The trial court noted that this was at least the second contempt filed by Kim in the matter, and ordered Davis to pay $500, serve 60 days in jail, and pay Kim's attorney fees of $2,172.50.

{¶ 16} The trial court suspended Davis's jail sentence for six months, and noted he could purge the contempt finding if the following conditions were met during the six-month period: (1) Davis immediately paid regular spousal support in the amount of $1,350 and the additional $200 that was added on for attorney fees; (2) Davis paid attorney fees and court costs within 60 days and reduced the arrearage of $15,838.37 plus administrative fees of $1,043.37 at the rate of one-sixth of that figure per month; (3) Davis provided Kim a copy

of the FEGLI life insurance policy, as well as documentation validating his claim that he is unable to comply with the Agreed Entry; and (4) Davis provided a valid residential address within 30 days.

{¶ 17} Davis, represented by appellate counsel, timely appealed from the trial court's decision and raised one assignment of error for this court's review. After filing the initial appellant's brief, counsel withdrew from the case and Davis filed a pro se "Amended Supplemental Brief of Appellant," wherein he raises four additional assignments of error.[2] For the ease of review, we will begin with the assignment of error raised by counsel, and address Davis's pro se assignments of error out of order.

{¶ 18} Assignment of Error No. 1:

{¶ 19} THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO RULE ON PENDING MOTIONS WHICH HAD THE EFFECT OF DENYING APPELLANT'S RIGHT TO APPEAL THE COURT'S PRIOR RULINGS INDEFINITELY. THIS EFFECTIVELY DENIED THE APPELLANT OF HIS DUE PROCESS RIGHTS. THE COURT'S FAILURE TO DO ITS DUTY AND TIMELY RULE ON PENDING MOTIONS, LEFT THE APPELLANT WITH NO RECOURSE TO THE TRIAL COURT'S RULINGS EXCEPT TO ENGAGE IN A FORM CIVIL DISOBEDIENCE BY REFUSING TO PAY THE TRIAL COURT'S ORDERED SPOUSAL SUPPORT.

{¶ 20} In his initial appellant's brief, Davis argues the trial court's failure to rule upon certain motions "in a timely manner" resulted in "unexplained, excessive, and ridiculous delays" that effectively denied Davis his due process rights. Essentially, Davis claims that, because the trial court has been "dilatory in its handling of this case," his only remedy "was

---

2. Prior to oral argument before this court, Davis retained new appellate counsel to argue on his behalf. During oral argument, Davis's new appellate counsel raised additional arguments as to why the trial court erred in finding Davis in contempt of the Agreed Entry. However, "an issue raised during oral argument for the first time and not assigned as error in an appellate brief is waived." *In re Estate of Burton*, 12th Dist. Warren No. CA2015-12-110, 2016-Ohio-2683, fn. 1.

an act of civil disobedience by withholding spousal support payments[.]"  This is because, without resolution of the pending motions, Davis argues justice was delayed, he was unable to appeal the totality of the underlying case, and was left "effectively without remedy" aside from civil disobedience.  In support, Davis points to four motions he filed between July 2019 and April 2020, as well as four motions filed by Kim between January 2019 and May 2020, all of which he claims were not decided in a "timely fashion."

{¶ 21} After a review, we find no merit to Davis's argument.  Despite Davis's claims, the record indicates that on June 29, 2020, shortly after the visiting judge was appointed, the trial court held a hearing to address the 22 motions pending at that time, including the motions identified by Davis in his brief.  After considering the evidence presented, the trial court denied all but two of Davis's motions in a bench ruling.  Thereafter, on March 31, 2021, the trial court issued a judgment entry denying all motions filed by Davis and considered at the June 29, 2020 hearing, including Davis's motion to modify his spousal support obligation due to fraud and false evidence.  Despite its designation as a final appealable order, Davis did not appeal from the trial court's denial of his motions.   As such, given the trial court's clear resolution of the outstanding issues on March 31, 2021, we disagree that Davis was left "effectively without remedy" throughout this case.

{¶ 22} Moreover, we disagree that any motions left pending after the June 29, 2020 hearing would have impacted Davis's obligation to pay spousal support.  Rather, the record is clear that the trial court denied Davis's request to modify his spousal support obligation, and Davis knew his claims of fraud and fabricated evidence had been rejected by the court prior to his contemptuous acts.  The remaining motions left under advisement concerned attorney fees and Kim's request to declare Davis a vexatious litigant.  Davis has presented no argument on appeal as to why the trial court's decision on those pending motions would have impacted or altered his obligation to pay spousal support to Kim.  After our review, we

conclude the trial court's impending decision upon those motions was entirely unrelated to Davis's spousal support obligation, and any delay by the trial court in rendering its decision did not violate Davis's due process rights or cause him to engage in civil disobedience.

{¶ 23} In light of the above, we find that Davis's claim of unavoidable civil disobedience due to the trial court's handling of the case is entirely unsupported by the record. As a result, we overrule Davis's first assignment of error.

{¶ 24} Pro Se Assignment of Error No. 2:

{¶ 25} FINAL ORDER DOES NOT COMPLY WITH REQUIREMENTS OF FORM AND CLARITY

{¶ 26} In his second pro se assignment of error, Davis claims the trial court abused its discretion in issuing a contempt order that is "ambiguous and unclear."

{¶ 27} "Disobedience to court orders may be punished by contempt." *Cottrell v. Cottrell*, 12th Dist. Warren No. CA2012-10-105, 2013-Ohio-2397, ¶ 11. To support a contempt finding, the moving party must establish by clear and convincing evidence that a valid court order exists, that the offending party had knowledge of the order, and that the offending party violated such order. *Hetterick v. Hetterick*, 12th Dist. Brown No. CA2012-02-002, 2013-Ohio-15, ¶ 35.

{¶ 28} In reviewing a trial court's judgment regarding contempt, an appellate court will not reverse the finding absent an abuse of discretion. *Grow v. Grow*, 12th Dist. Butler Nos. CA2010-08-209, CA2010-08-218, and CA2010-11-301, 2012-Ohio-1680, ¶ 73. This includes the imposition of penalties. *Mackowiak v. Mackowiak*, 12th Dist. Fayette No. CA2010-04-009, 2011-Ohio-3013, ¶ 45. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Maloney v. Maloney*, 12th Dist. Warren No. CA2015-10-098, 2016-Ohio-7837.

{¶ 29} In this case, the trial court found Davis in contempt of the Agreed Entry due to his failure to pay spousal support to Kim. Davis does not deny that he "made a decision to stop making [spousal support] payments," nor does he claim the trial court abused its discretion in concluding he violated the court's orders. Rather, Davis raises a litany of arguments purporting to challenge the validity and clarity of the trial court's October 18, 2021 judgment entry.

{¶ 30} First, Davis claims the final order is ambiguous and unclear because no evidence was submitted concerning Kim's attorney fees, nor was any discovery conducted regarding the FEGLI policy. After a review of the record, we disagree with Davis's claim.

{¶ 31} Based upon the language used by the trial court, it is clear the trial court based its contempt finding solely upon Davis's failure to make spousal support payments in accordance with the Agreed Entry. Specifically, the trial court found that Davis had not offered any evidence or valid reason to explain his failure to comply with the court's order, and that Davis had failed to pay any spousal support after October 2020. The trial court then found Davis "to be in contempt of the Agreed Entry filed December 12, 2014, wherein he was ordered to pay $1,350.00 per month[.]"

{¶ 32} Although Kim also filed a motion for attorney fees and a motion for contempt concerning Davis's assignment of the FEGLI policy, the trial court's contempt finding did not pertain to those matters. Instead, the trial court discussed the FEGLI policy as a part of its purge conditions and ordered Davis to provide Kim with a copy of the policy, as well as documentation validating his claim at the hearing that he is unable to comply with the Agreed Entry. Merely mentioning the FEGLI policy in its enumerated purge conditions does not equate to a contempt finding. Accordingly, we find no merit to Davis's argument that the trial court's discussion of Kim's attorney fees or the FEGLI policy created any ambiguity in the contempt order. This is because, as noted above, the trial court did not base its

contempt finding upon those issues.

{¶ 33} We likewise reject Davis's argument that any subsequent motion for contempt filed by Kim creates any ambiguity in the trial court's decision. Specifically, any subsequent filings made by Kim after the trial court issued its final appealable order are not relevant to whether the trial court abused its discretion in finding Davis in contempt of the Agreed Entry for failing to pay spousal support. This is because the success or failure of any subsequent contempt motions filed by Kim has no effect on whether the trial court's October 18, 2021 final judgment entry, the subject of the instant appeal, is valid and enforceable. Rather, the subsequent contempt action is distinct from Kim's January 6, 2021 motion, and requires new notice, hearing, and determination by the trial court. *In re C.L.W.*, 12th Dist. Clermont No. CA2021-05-013, 2022-Ohio-1273, ¶ 57.

{¶ 34} We are also unpersuaded by Davis's argument that the trial court erred in categorizing him as a second-time offender and penalizing him with a $500 fine plus 60 days in jail. As an initial note, we disagree that the trial court found Davis to be a second-time offender pursuant to R.C. 2705.05(A). A careful reading of the trial court's decision indicates the trial court noted "[t]his is at least the second contempt *filed* by [Kim] in this matter." (Emphasis added.) Such a statement is supported by the record, as Kim moved the trial court to find Davis in contempt in 2019, but that motion was ultimately dismissed pursuant an agreement between the parties. Notably, the agreement between the parties included the addition of $200 to Davis's spousal support obligation, which Davis admits he stopped paying. As such, the trial court did not erroneously find Davis to be a second-time contempt offender.

{¶ 35} Regarding the penalty itself, R.C. 2705.05(A) prescribes sanctions for contempt violations, and states that, if the accused is found guilty of the contempt charge, "the court may impose * * * [f]or a first offense, a fine of not more than two hundred fifty

dollars, a definite term of imprisonment of not more than thirty days in jail, or both[.]" R.C. 2705.05(A)(1).

{¶ 36} Because the trial court imposed a fine of $500 and a 60-day jail sentence, Davis claims the trial court abused its discretion by imposing a penalty greater than the maximum set forth in R.C. 2705.05(A)(1). However, despite Davis's strict interpretation of R.C. 2705.05, "it is well established that trial courts are not bound by the sanction limits of R.C. 2705.05 when imposing a penalty for contempt." *Cleveland v. Bright*, 8th Dist. Cuyahoga No. 108989, 2020-Ohio-5180, ¶ 45; *see also State ex rel. Yost v. Crossridge, Inc.*, 7th Dist. Jefferson No. 21 JE 0016, 2022-Ohio-1455, ¶ 38 ("[I]t is also clear that R.C. 2705.05(A) is to be considered as a guideline for the court when punishing a contemptor"); *Heinrichs v. 356 Registry Inc.*, 10th Dist. Franklin Nos. 15AP-532 and 15AP-595, 2016-Ohio-4646, ¶ 75-76; *Copley Twp. Bd. of Trustees. v. W.J. Horvath Co.*, 193 Ohio App. 3d 286, 2011-Ohio-1214, ¶ 10 (9th Dist.). Rather, it is the full discretion of the trial court to craft a sanction without regard to those statutory penalties. *Toledo v. Ross*, 6th Dist. Lucas No. L-06-1046, 2007-Ohio-451, ¶ 24. This is because, although R.C. 2705.05 provides sanctions for instances of contempt, the statute is merely cumulative to a court's inherent contempt power, and it does not in any way abridge that inherent power. *Bright* at ¶ 35, citing *Hale v. State*, 55 Ohio St. 210, 217 (1896).

{¶ 37} Therefore, and as noted by the Ohio Supreme Court, "[a]lthough * * * the General Assembly may prescribe procedure in indirect contempt cases, the power to punish for contempt has traditionally been regarded as inherent in the courts and not subject to legislative control." *Cincinnati v. Cincinnati Dist. Council 51*, 35 Ohio St.2d 197, 207 (1973). Thus, courts have "wide discretion to determine the punishment for contempt of [their] own orders." S*tate ex rel. Anderson v. Indus. Comm.*, 9 Ohio St.3d 170, 172 (1984).

{¶ 38} Based on the above, we conclude the trial court did not abuse its discretion

simply because it imposed a harsher sanction than specified in R.C. 2705.05 for a first-time offender. We also find, after reviewing the totality of the circumstances, that the trial court's sanction was not otherwise unconscionable, unreasonable, or arbitrary.

{¶ 39} At the contempt hearing, which Davis attended via video due to a foreseen scheduling conflict, the trial court heard evidence that Davis's total income was approximately $64,000 and that he received approximately $6,000 per month in various forms of income. Davis acknowledged that there was an order in place requiring him to pay $1,350 per month in spousal support, with an additional $200 per month until the $5,200 attorney fee award was paid in full.

{¶ 40} Kim submitted evidence that Davis was in arrears of $15,838 as of August 31, 2021. While Davis admitted he had not paid spousal support to Kim since October 2020, he denied that he was in arrears. Specifically, Davis explained that he is "not really in arrears," he simply had not had a chance to appeal "this" or "address" the legality of the arrears "in a different court." Thus, it was Davis's position at the hearing that he was not "refusing" to pay spousal support, but wanted "get in front of a fair court," to recalculate the support to a "fair" amount. On redirect examination, Davis acknowledged that each of his four motions to modify the spousal support amount had been denied.

{¶ 41} In its decision, the trial court carefully examined the testimony at the hearing, as well as the procedure of the case leading up to Kim's motion for contempt. In so doing, the trial court focused on the many hurdles that have been presented in this case and concluded that Davis seems "unwilling to accept the opinion of Judge Carter, the sitting Judge of the Twelfth District Court of Appeals, or the Federal District Court" regarding his spousal support obligation. Notably, despite decisions from three separate judicial tribunals, Davis continues to argue that the current support award is based upon misrepresentations, fabricated evidence, fraud, and false evidence. Thus, it appears from

Davis's testimony during the hearing, and behavior throughout this case, that he is reluctant to resume making spousal support payments until he receives what he perceives to be a "fair trial" and the spousal support amount is altered. This appears true despite the fact that Davis's requests to modify his spousal support payment have been repeatedly denied throughout the course of this case and that he failed to appeal the most recent denial in March 2021 when he could have done so. Consequently, and as noted by the trial court, we conclude Davis has presented no evidence or legitimate explanation for his failure to make spousal support payments since October 2020.

{¶ 42} Under such circumstances, we decline to find the trial court abused its discretion in imposing a $500 fine and a 60-day jail sentence. Generally, a sentence for civil contempt is designed to coerce the contemnor in order to obtain compliance with the lawful order of the court. *State v. Kilbane*, 61 Ohio St.2d 201, 205 (1980). Thus, while Davis may consider the sanction to be unreasonable, arbitrary, and unconscionable, we find the trial court could have reasonably determined that, based upon Davis's long-term reluctance to pay spousal support to Kim, the imposition of an increased sanction was necessary to coerce Davis to comply with the Agreed Entry. We further find it was reasonable for the trial court to consider Kim's prior filing for contempt against Davis for the non-payment of attorney fees and costs prior to imposing an increased sanction. It is well settled that Davis, as the "contemnor[,] is said to carry the keys of his prison in his own pocket," and the sentence will be suspended or terminated if he complies with the trial court's purge conditions. *In re J.M.*, 2008-Ohio-6763 at ¶47; *see also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497 (1949).

{¶ 43} Accordingly, and in light of all the foregoing, we overrule Davis's second pro se assignment of error.

{¶ 44} Pro Se Assignment of Error No. 1:

{¶ 45} SERVICE WAS NOT PERFECTED

{¶ 46} Pro Se Assignment of Error No. 3:

{¶ 47} VIOLATION OF DUE PROCESS

{¶ 48} In his pro se brief, Davis claims the trial court abused its discretion in finding he was in contempt of the court's orders because service was not perfected prior to the hearing. Similarly, Davis also argues the trial court violated his due process rights when it allowed the case to continue and service was never perfected.

{¶ 49} Because deprivation of liberty or property is implicated in a contempt charge, one accused of an indirect civil contempt must be afforded due process before a court can order punishment. *Poptic v. Poptic*, 12th Dist. Butler No. CA2005-06-145, 2006-Ohio-2713, ¶ 8. The due process requirements are fulfilled when the accused has been afforded adequate notice and a chance to be heard. *Crist v. Battle Run Fire Dist.*,115 Ohio App.3d 191, 197 (3d Dist.1996). In addition to traditional due process requirements, R.C. 2705.03 requires that an accused contemnor be given an opportunity to be heard. During the hearing, the court is charged with investigating the charge, hearing the testimony, answer, or explanation the accused offers, and then determining guilt or innocence. *In re J.M.*, 12th Dist. Warren No. CA2008-01-004, 2008-Ohio-6763, ¶ 49.

{¶ 50} On appeal, Davis does not argue that he was not afforded adequate notice or a chance to be heard at the contempt hearing, nor does he claim the trial court failed to comply with the procedural due process requirements set forth in R.C. 2705.03. Instead, Davis alleges his due process rights were violated by Kim's failure to properly serve Davis.

{¶ 51} R.C. 2705.031(D) contemplates that the accused will be served with a contempt action "as required by the Rules of Civil Procedure or by any special statutory proceedings that are relevant to the case[.]" Relevant here, Civ.R. 75(J) provides that "[t]he continuing jurisdiction of the [domestic relations] court shall be invoked by motion filed in

the original action, notice of which shall be served in the manner provided for the service of process under Civ.R. 4 to 4.6." Lack of proper service under Civ.R. 75(J) can, however, be waived. Where a party appears in court, fails to object to improper service pursuant to Civ.R. 75(J), and defends on the merits of the case, that party will be deemed to have waived the issue of improper service. *Sweeney v. Sweeney*, 8th Dist. Cuyahoga No. 103389, 2016-Ohio-1384, ¶ 25.

**{¶ 52}** In this case, the record reflects that Kim had difficulty serving Davis, which was compounded by Davis's refusal to provide a legitimate residential address to the court. Eventually, Davis authorized his counsel to accept service on his behalf of the motions filed by Kim on January 6, 2021. Less than one month later, Davis's counsel filed an "Amended Notice of Service of Motions Filed on 1/6/2021," which confirmed service and Davis's receipt of Kim's motions. Accordingly, although Davis later denied receiving Kim's motions from his counsel, the record reflects he confirmed service prior to the contempt hearing.

**{¶ 53}** Moreover, even if Davis was not properly served, he waived the defense of insufficient service of process when he failed to move the trial court to dismiss the contempt action on that basis and proceeded to defend the contempt action on the merits. *Id.* That is, although Davis generally denied receipt of Kim's contempt motion, the record does not reflect he ever, verbally or in written form, requested the trial court to dismiss the contempt action on the basis of insufficient service of process or personal jurisdiction.[3] Nor does the record reflect Davis objected to the trial court's exercise of continuing jurisdiction pursuant to Civ.R. 45(J) due to lack of service. Instead, Davis acknowledged, authorized, and confirmed service of the motions through his counsel on the record, participated in pretrial

---

3. Davis notes in his pro se brief that, at the May 3, 2021 telephone conference, "[Davis's] counsel asked the trial judge for a dismissal. He was told if he did file it, he'd deny it." However, there is no evidence in the record to support that this exchange occurred, nor does the record reflect any discussion of dismissal. Notably, the record indicates Davis did not attend the May 3, 2021 telephone conference.

conferences on the matter, and proceeded to defend the contempt action on the merits at the final hearing. Consequently, because Davis did not properly challenge the trial court's jurisdiction on the basis of improper service, we find he has waived the issue. *Longshore v. White*, 8th Dist. Cuyahoga No. 66363, 1994 Ohio App. LEXIS 2185, *4-6 (May 19, 1994).

{¶ 54} Therefore, finding Davis waived any challenge to improper service, we overrule his first and third pro se assignments of error.

{¶ 55} Pro Se Assignment of Error No. 4:

{¶ 56} JURISDICTION

{¶ 57} In his final pro se assignment of error, Davis argues the trial court's decision and order is void because the trial court did not have jurisdiction to consider the contempt motion. Specifically, Davis claims the trial court was only permitted to hear motions relating to spousal support, as outlined in the Agreed Entry.

{¶ 58} The law is well-established that "a court may enforce its own orders, including divorce decrees." *Stocker v. Stocker*, 9th Dist. Wayne No. 12CA0021, 2012-Ohio-5821, ¶ 30. As noted above, "[u]nder Civ.R. 75[J], the continuing jurisdiction of a court that issues a domestic relations decree 'may be invoked by the filing of any motion by a party.'" *State ex rel. Soukup v. Celebrezze*, 83 Ohio St.3d 549, 551 (1998), quoting *Blake v. Heistan*, 99 Ohio App.3d 84, 87 (3d Dist.1994). "A postdecree show-cause motion filed by a party invokes both the inherent power of a domestic relations court to enforce its own orders and the court's continuing jurisdiction under Civ.R. 75[J]." *Id.*

{¶ 59} In this case, the Agreed Entry ordered Davis to pay $1,350 in spousal support to Kim indefinitely. That order was upheld by this court on appeal. Davis later agreed to increase the spousal support award amount by $200 until $5,200 in arrears had been satisfied. As noted above, this agreement was adopted and ordered by the trial court. As a result, the trial court clearly had jurisdiction in the instant matter, as Kim's postdecree

show-cause motion invoked both the inherent power of a domestic relations court to enforce its prior orders and the court's continuing jurisdiction pursuant to Civ.R. 75(J).

**{¶ 60}** Davis's fourth pro se assignment of error is overruled.

**{¶ 61}** Finding no merit to any of the claims raised in either Davis's original appellant's brief, or his pro se "Amended Supplemental Brief of Appellant," we affirm the trial court's decision in its entirety.

**{¶ 62}** Judgment affirmed.

M. POWELL, P.J., and HENDRICKSON, J., concur.