[Cite as *Petroni v. Petroni*, 2024-Ohio-615.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

KIMBERLY D. PETRONI,                   :

    Appellee and Cross-Appellant,      :

        CASE NOS.  CA2023-01-003
                  CA2023-01-004

                  :          O P I N I O N

    - vs -                                          2/20/2024

                  :

DAVID F. PETRONI,                       :

    Appellant and Cross-Appellee.      :

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 17DR39570

Michelle Maciorowski Law, LLC, and Michelle M. Maciorowski, for appellee and cross-appellant.

Miller, Westwood & Brush, LLP, and Cynthia L. Westwood, for appellant and cross-appellee.

**M. POWELL, J.**

{¶ 1} Appellant, David F. Petroni ("Father"), appeals a decision of the Warren County Court of Common Pleas, Domestic Relations Division, finding him in contempt for nonpayment of support to appellee, Kimberly D. Petroni ("Mother"), and overruling his

motions to modify the amount of his support payments and to hold Mother in contempt for interfering with his allocated parenting time. Mother cross-appeals, seeking additional attorney's fees for Father's frivolous conduct in seeking modification of his support payments.

**{¶ 2}** Four children were born issue of the parties' marriage, three of which remain minors for purposes of this appeal. The parties' Final Judgment Entry and Decree of Divorce ("the Decree") was filed June 5, 2019. Pursuant to the Decree, Father was ordered to pay: Tier I spousal support totaling $5,196.16 per month and calculated upon a base income of $250,000; and Tier II spousal support of 34% of additional annualized monthly income in excess of $250,000. A Shared Parenting Decree approving their Shared Parenting Plan ("the SPP") was also journalized on June 5, 2019. Pursuant to the SPP, Father was ordered to pay Tier I and Tier II child support calculated in the same manner as Tier I and Tier II spousal support. Tier I child support obligation set at $2,510.22 per month.

**{¶ 3}** Father works in real estate development and operates his own consulting businesses. In September 2019, one of Father's major business contracts with a company known as "PIRHL" was terminated, which Father claims was a significant loss of income such that $250,000 is no longer an appropriate base income for calculating support payments.

**{¶ 4}** On December 9, 2019, Father filed a motion to modify child support and spousal support, and on January 28, 2021, Father filed a motion to show cause asserting that Mother was in contempt for interfering with his parenting time under the SPP. On February 10, 2021, Mother filed a motion to show cause asserting that Father was in contempt for failing to pay his child and spousal support obligations for January and

February 2021.  On March 9, 2021, Mother filed another motion to show cause asserting that Father was in contempt for failing to pay his portion of the children's extra-curricular activities and reiterating that he was in contempt for his failure to pay child and spousal support for January and February of 2021.   Additionally, Mother sought attorney's fees in each of her motions.

**{¶ 5}**   A hearing commenced on August 24, 2020 and was continued in progress until May 3, 2021 when it was completed.  Father testified on his own behalf, and presented testimony from a vocational assessment expert, and from his personal accountant.  Mother testified on her own behalf.

**{¶ 6}**   The magistrate issued a decision on November 24, 2021.  The magistrate found that Father earned more than $250,000 annually for 2019 and 2020 and therefore denied Father's motion to modify child support and spousal support.  The magistrate held Mother in contempt for one instance of restricting Father's access to parenting time and recommended a three-day suspended jail sentence.  Further, the magistrate found Father in contempt for his failure to pay child and spousal support for January and February 2021 and recommended he be sentenced to five days in jail and that the domestic relations court consider whether to impose a previously suspended ten-day jail sentence for a prior contempt finding.  Finally, the magistrate held that Father was in contempt for his failure to pay his share for the children's extracurricular activities and recommended an additional three-day jail sentence.

**{¶ 7}**   On August 27, 2021, Father filed another motion for contempt against Mother, alleging a pattern of denying him parenting time in the summer and for unilaterally scheduling therapy appointments without consulting him as required by the SPP.  A hearing was held on January 13, 2022, and the magistrate issued a decision on February

24, 2022 denying Father's motion.

{¶ 8} Father timely filed objections to both the magistrate's November 24, 2021 decision and February 24, 2022 decision. On December 16, 2022, the trial court issued a judgment entry affirming both magistrate's decisions.

{¶ 9} Father now appeals with seven assignments of error, and Mother cross-appeals with a single assignment of error. We first address Father's assignments of error.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT ERRED BY FAILING TO CONDUCT A DE NOVO REVIEW OF THE MAGISTRATE'S DECISIONS WHICH WERE FILED NOVEMBER 24, 2021, AND FEBRUARY 24, 2022.

{¶ 12} In his first assignment of error, Father claims the trial court failed to perform an independent review of the objected matters before it pursuant to Civ.R. 53(D)(4)(d), asserting that the trial court based its judgment merely on the various motions before the magistrate and the magistrate's decisions on each, and failed to make specific reference to the transcript or evidence in the record.

{¶ 13} In ruling on objections to a magistrate's decision, Civ.R. 53(D)(4)(d) requires a trial court to independently review the objected matters to ascertain whether the magistrate properly determined the factual issues and appropriately applied the law. *Koeppen v. Swank*, 12th Dist. Butler No. CA2008-09-234, 2009-Ohio-3675, ¶ 26. When conducting its de novo review, the trial court may not defer to the magistrate because the magistrate is a subordinate officer of the trial court, not an independent officer performing a separate function. *Leach v. Leach*, 12th Dist. Butler No. CA2019-06-092, 2020-Ohio-1181, ¶ 11. Consequently, the trial court has the ultimate authority and responsibility over the magistrate's findings and rulings. *Mandzak v. Graves*, 12th Dist. Butler No. CA2009-

06-173, 2010-Ohio-595, ¶ 7. On appeal, this court presumes the trial court performed an independent review of the magistrate's decision unless the appellant affirmatively demonstrates otherwise. *Wiseman v. Wiseman*, 12th Dist. Madison No. CA2022-03-004, 2022-Ohio-3689, ¶ 23.

{¶ 14} Contrary to Father's contentions, the trial court's judgment entry on the objections to the magistrate's decisions of November 24, 2021 and February 24, 2022 states that it was "provided-extensive transcripts and all relevant filings to enable the undersigned to make a decision." The trial court noted that the proceedings before the magistrate involved numerous motions for contempt relating to parenting time and the nonpayment of child support, spousal support, and certain expenses, as well as motions for the modification of court-ordered support and the payment of attorney fees. The trial court then detailed the various issues before it on the objections and concluded by stating, "Having reviewed the various motions before the magistrate and his Decisions on each, the Court affirms the magistrate's decisions of November 2021 and February 2022 in all particulars." The trial court's judgment entry reflects it conducted the necessary de novo, independent review.

{¶ 15} Father's first assignment of error is overruled.

{¶ 16} Assignment of Error No. 2:

> IN ITS DECISION DATED NOVEMBER 24, 2021, THE TRIAL COURT ERRED IN FINDING MR. PETRONI IN CONTEMPT AS ALLEGED IN MRS. PETRONI'S SHOW CAUSE MOTION FILED FEBRUARY 10, 2021, AND BRANCH II OF HER SHOW CAUSE MOTION FILED MARCH 9, 2021.

{¶ 17} In his second assignment of error, Father claims that the trial court abused its discretion in finding him in contempt for failing to pay January and February 2021 spousal and child support as he demonstrated that he had an inability to pay as ordered.

In support of this claim, Father argues that the termination of the PIRHL contract was a substantial change in circumstances, he lost his employment, and had no "W-2" income from September 2021 until early spring of 2022.

{¶ 18} "In reviewing a trial court's judgment regarding contempt, an appellate court will not reverse the finding absent an abuse of discretion." *Davis v. Davis*, 12th Dist. Butler No. CA2021-11-139, 2022-Ohio-3179, ¶ 28. "[T]he [support] obligor * * * bears the burden of alleging and proving his inability to comply with the court's [support] order." *Cox v. Cox*, 12th Dist. Warren No. CA2016-05-040, 2017-Ohio-1010, ¶ 25.

{¶ 19} Father was ordered to pay Tier I and II spousal support and Tier I and II child support. Based upon his income of $250,000, Father was to pay Mother Tier I monthly spousal support of $5,196.26 and Tier I monthly child support of $2,510.22 for a total amount of $7,706.48 per month. For January and February 2021, Father only paid Mother a total of $6,000. The Magistrate found Father in contempt for failing to pay Mother spousal and child support as ordered and recommended he be sentenced to five days in jail unless he purged his contempt by paying Mother the sum of $9,412.76 on or before January 31, 2022.

{¶ 20} Although Father lost the PIRHL contract income, and his income fluctuated month to month, Father's business and financial records indicated that he still earned more than $250,000. Father additionally earned nearly $100,000 from the sale of real estate in late 2020, albeit with Mother already entitled to half of the net proceeds. Father did not demonstrate an inability to comply with the court ordered support payments for January 2021 and February 2021.

{¶ 21} Father's second assignment of error is overruled.

{¶ 22} Assignment of Error No. 3:

IN ITS DECISION DATED NOVEMBER 24, 2021, THE TRIAL COURT ERRED IN FINDING MR. PETRONI IN CONTEMPT FOR FAILING TO PAY FOR EXTRACURRICULAR ACTIVITIES AS ALLEGED IN BRANCH I OF MS. PETRONI'S SHOW CAUSE MOTION FILED MARCH 9, 2021.

{¶ 23} In his third assignment of error, Father argues that he should not be held in contempt for failing to reimburse Mother for therapy and piano expenses because there was no evidence that he agreed to the children participating in those activities as provided by the SPP.

{¶ 24} The SPP provides, "Regarding payment of extra-curricular activities, the parents shall both pay towards those activities they agree for the children to attend. If a parent demonstrates a consistent refusal to agree to extracurricular activities the children are known to love and excel in, that parent risks losing the designation as a residential parent of the children."

{¶ 25} The SPP also provides that, "[t]he costs of uninsured medical, dental, orthodontic, optical, psychological, or psychiatric expenses * * * shall be divided 69% to Father and 31% to Mother."

{¶ 26} Mother presented an exhibit demonstrating that she sought reimbursement of the children's expenses for therapy and piano via Our Family Wizard. Father did not reimburse Mother, claiming he did not have the money to do so. Mother therefore moved to have Father held in contempt for failing to pay his portion of those expenses. Mother's motion included certain extracurricular expenses she incurred subsequent to her filing of the contempt motion. The trial court excluded these post-contempt motion expenses in consideration of Mother's contempt motion.

{¶ 27} The trial court noted that the SPP did not specify the percentage of extracurricular expenses each parent should pay. The trial court ordered that the SPP

be modified to provide that Father pay 69% and Mother pay 31% of the children's extracurricular expenses. Because Father had reimbursed Mother nothing toward those expenses, the trial court found Father in contempt and sentenced him to three days in jail and provided that he could purge himself of contempt by paying Mother, on or before December 10, 2021, the sum of $1,060.29 (69% of his son's soccer fees) and $358.80 (69% of his son's and daughter's piano fees), for a total payment of $1,419.09.

{¶ 28} Father mischaracterizes the children's therapy expenses as "extra-curricular" expenses. On the contrary, the children's therapy expenses are "psychological, or psychiatric expenses" subject to the 69%-31% formula established by the SPP in a provision separate from that relating to extracurricular activity expenses. Thus, the therapy expenses are not subject to extracurricular activities the parties "agree for the children to attend."

{¶ 29} During a hearing on December 7, 2018, Mother's counsel cross-examined Father and inquired whether he agreed to the children's participation in various activities. Father testified that he agreed to the children's participation in piano. Father also confirmed that he would pay 69% of the cost of the children's participation in those activities that he agreed to, which included piano. Specifically, the trial court stated that the percentage of income split was 69%-31% and Father testified that, "I agree to the proportion discussion the judge just explained * * *."

{¶ 30} Although the SPP does not provide proportionate responsibility of the parties for the piano expenses, Father agreed in open court and under oath to pay 69% of those expenses. To address this omission from the SPP, the trial court sua sponte ordered that extracurricular expenses be subject to the same 69%-31% allocation as other expenses. Furthermore, the SPP, although lacking a percentage allocation for the

children's extracurricular activities, unequivocally provided that the parties "shall both pay towards those activities" and Father reimbursed Mother nothing.

**{¶ 31}** The trial court did not abuse its discretion in finding Father in contempt for failing to reimburse Mother for expenses incurred by her for the children's therapy and piano.

**{¶ 32}** Father's third assignment of error is overruled.

**{¶ 33}** Assignment of Error No. 4:

> IN ITS DECISION DATED NOVEMBER 24, 2021, THE TRIAL COURT ERRED IN FINDING MR. PETRONI MAY BE SUBJECT TO THE IMPOSITION OF A SUSPENDED JAIL SENTENCE FOR A PRIOR FINDING OF CONTEMPT AFTER THE CONTEMPT HAD BEEN PURGED

**{¶ 34}** In his fourth assignment of error, Father claims he may not be subjected to a previously suspended ten-day jail sentence for a January 8, 2020 finding of contempt because the magistrate already determined that previous finding of contempt had been purged pursuant to a magistrate's decision of June 9, 2020.

**{¶ 35}** The magistrate's November 24, 2021 decision only recommended that the trial court consider whether to impose the previously suspended ten-day jail sentence. The magistrate's decision did not include a recommendation that Father be ordered to serve the suspended sentence. The trial court's December 16, 2022 judgment entry affirms the magistrate's decisions "in all particulars." But, the trial court did not order father to serve the previously suspended ten-day jail sentence. Absent imposition of a sentence there is no final appealable order. *See City of Middleburg Hts. v. Elsing*, 8th Dist. Cuyahoga No. 104116, 2016-Ohio-7051, ¶ 13.

**{¶ 36}** Nonetheless, as Father asserts, in the magistrate's decision of June 9, 2020, the magistrate found that Father had purged the January 8, 2020 contempt finding.

- 9 -

"A key aspect of civil contempt * * * is the opportunity for the contemnor to purge [himself] of the contempt sanction, and the discontinuation of the sanction once compliance is achieved." *Mackowiak v. Mackowiak*, 12th Dist. Fayette No. CA2010-04-009, 2011-Ohio-3013, ¶ 40. "When a party substantially complies with the order, the reason for the contempt sanction no longer exists and execution of sentence is not appropriate." *State ex rel. Sutich v. Segedi*, 8th Dist. Cuyahoga No. 94309, 2010-Ohio-5360, ¶ 6 (finding the trial court abused its discretion in executing sentence on a contempt order after it had been purged). The magistrate's decision of November 24, 2021 and the judgment entry of December 16, 2022 approving the magistrate's decision reflect that Father remains subject to a suspended ten-day jail sentence for a purged contempt. This is error.

{¶ 37} Accordingly, Father's fourth assignment of error is sustained and, pursuant to App.R. 12(B), we find, as a matter of law, that Father is no longer subject to the suspended ten-day jail sentence imposed as a sanction on the 2020 finding of contempt which Father subsequently purged.

{¶ 38} Assignment of Error No. 5:

IN ITS DECISION DATED NOVEMBER 24, 2021, THE TRIAL COURT ERRED IN FAILING TO MODIFY MR. PETRONI' S SPOUSAL AND CHILD SUPPORT ORDERS.

{¶ 39} In his fifth assignment of error, Father argues that the court erred in failing to modify his spousal and child support orders.

{¶ 40} Trial courts are given broad discretion in determining whether to modify spousal support or child support orders. Therefore, an appellate court will not overturn a trial court's decision regarding spousal support or child support absent an abuse of discretion. *Cox*, 2017-Ohio-1010, ¶ 9; *McNeal v. Mahon*, 12th Dist. Clermont No. CA2015-11-094, 2016-Ohio-5373, ¶ 36.

{¶ 41} On December 9, 2019, Father filed a motion to modify his Tier I spousal support and child support because it was based upon his income with the PIRHL contract. Due to the termination of the PIHRL contract in September 2019, Father claims his income had substantially decreased. The trial court denied Father's motion, finding that his 2019 income was $261,832.10, and thus still more than the annual $250,000 Tier I support baseline. The evidence further reflected that Father continued to earn around $250,000 in 2020. Furthermore, Father had historically experienced substantial annual income fluctuations during the marriage. The trial court did not abuse its discretion in refusing to modify Father's support orders.

{¶ 42} Father's fifth assignment of error is overruled.

{¶ 43} Assignment of Error No. 6:

> IN ITS DECISION DATED NOVEMBER 24, 2021, THE TRIAL COURT ERRED IN FAILING TO CONSIDER EVIDENCE REGARDING MR. PETRONI'S INCOME.

{¶ 44} In his sixth assignment of error, Father argues that the trial court erred in failing to permit him to offer evidence that he had obtained new employment earning a reduced income of $144,000 per year.

{¶ 45} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173(1987), paragraph two of the syllabus. An appellate court will not disturb evidentiary rulings absent an abuse of discretion that produced a material prejudice to the aggrieved party. *State v. Maurer*, 15 Ohio St.3d 239, 265 (1984).

{¶ 46} Father filed his motion to modify his Tier I spousal support and child support on December 9, 2019. The hearing commenced on August 24, 2020 and was continued in progress until May 3, 2021. It was in the midst of the May 3, 2021 hearing that Father

sought to introduce evidence of his income based upon new employment. Father had only recently before the May 3, 2021 hearing advised Mother's counsel of his new employment. Mother's counsel advised the court that due to the recency of the disclosure he had not been able to conduct discovery on the issue. The magistrate instructed the parties that, "we will deal with [Father's] current income in the future."

{¶ 47} The trial court did not abuse its discretion in declining to hear evidence of Father's new employment as it was only disclosed shortly before the last day of a multi-year hearing, and the hearing was concerned with Father's earnings in 2019 and 2020 and his failure to make support payments in January and February of 2021.

{¶ 48} Father's sixth assignment of error is overruled.

{¶ 49} Assignment of Error No. 7:

> IN ITS DECISION DATED FEBRUARY 24, 2022, THE TRIAL COURT ERRED BY FAILING TO FIND MS. PETRONI IN CONTEMPT FOR DENYING MR. PETRONI PARENTING TIME AND FOR FAILING TO FOLLOW THE SHARED PARENTING PLAN.

{¶ 50} In his seventh assignment of error, Father argues that the trial court erred by failing to find Mother in contempt for denying him parenting time and failing to follow the shared parenting plan.

{¶ 51} On August 27, 2021, Father filed a motion seeking to have Mother found in contempt for denying him the parenting time to which he was entitled pursuant to the SPP. Pursuant to the SPP, summer parenting time is allocated as follows:

> Summer Parenting Time; Vacation. * * * The remaining weeks of the summer shall be divided evenly, with Father having Monday and Tuesday overnight parenting time, Mother having Wednesday and Thursday overnight parenting time, and the parties alternating Friday through Monday morning parenting time. Pick up and drop off shall be at a mutually agreed upon time. If the parties are unable to agree the pick up and drop off time shall be at 9:00 a.m. on each respective

- 12 -

day.

**{¶ 52}** The SPP further provides that "Mother shall be responsible for scheduling routine appointments and providing notice of those appointments as soon as they are made. Mother shall not schedule an appointment during Father's parenting time without consulting him in advance and obtaining his agreement."

**{¶ 53}** The problem arose due to their son's and daughter's therapy sessions with the therapist in Lebanon, Ohio with whom the children had been counselling for approximately a year and a half. Each child has a separate one-hour therapy session which are scheduled back-to-back. The therapy sessions occur on Tuesdays and typically take place between noon and 3:00 p.m. When Mother first scheduled the appointments around mid-2020, she did not consult with Father. Rather, Mother posted the appointment on the My Family Wizard shared calendar and when Father did not object, Mother assumed he agreed.

**{¶ 54}** Problems arose in early to mid-2021. In March 2021, Father's employment situation changed. When the SPP was adopted, Father was self-employed and had a flexible employment schedule. Although Father's new employment permitted him to work from home, it required that he be on this computer from 8 a.m. to 6 p.m. In June 2021 Father's residence changed and his home was no longer on Mother's route from her home to the children's therapist's office. Previously, Mother could pick the children up from Father's home, take them to therapy and then drop them off at Father's home on her way home from therapy. It was now "extremely difficult" for Father to take the children to therapy as it would take 3-4 hours out of his workday. Mother remained adamant that the children participate in therapy and threatened to withhold Father's parenting time if he did not get them to therapy.

**{¶ 55}** To resolve the issue, Mother proposed that Father drop the children off to her in the morning or during the lunch hour and she would return them to Father after therapy. Father proposed that the children attend therapy virtually or change therapists. Neither party was receptive to the other's proposal.

**{¶ 56}** Father claimed that he did not have parenting time on Monday July 12, 2021. Mother disputes this, claiming that he picked their son up from her home at 6 pm that day and that while their daughter went out to Father's car, she did not go home with him. Father also claimed he did not receive his parenting time on July 26-27, 2021 because Mother told him he could pick them up after therapy on July 27, 2021. Specifically, Mother had texted Father and asked if he would be taking their son to therapy on July 27, 2021. When Father did not respond, Mother advised Father that because he would not respond, their son would be staying with her. Eventually, Mother advised Father that if he would drop their son off at her home on the morning of July 27, 2021, she would take him to therapy and then return him to Father after his therapy session. Father did not drop their son off at Mother's on July 27, 2021. A similar situation occurred concerning the August 10, 2021 therapy sessions for both their son and daughter. The magistrate declined to find Mother in contempt because the evidence was unclear regarding the days Father claimed to have missed his parenting time, whether Father attempted to pick the children up to exercise his parenting time on those days, and because Father refused to work with Mother on a solution to ensure the children would attend counseling on Tuesdays.

**{¶ 57}** A trial court may find a party in contempt when the moving party establishes by "clear and convincing evidence that a valid court order exists, that the offending party had knowledge of the order, and that the offending party violated such order." *Davis v.*

*Davis*, 12th Dist. Butler No. CA2021-11-139, 2022-Ohio-3179, ¶ 21, citing *Hetterick v. Hetterick*, 12th Dist. Brown No. CA2012-02-002, 2013-Ohio-15, ¶ 35.

**{¶ 58}** Father claimed he missed parenting time on 8-9 days, including July 12, 26, and 27, 2021, but was not specific as to other days he claimed to have missed. There was also evidence that Father did not come to Mother's home to pick the children up for his parenting time on those days even on the following Wednesday morning.

**{¶ 59}** The trial court, apparently finding that Father had failed to meet his burden of clear and convincing evidence, did not abuse its discretion in declining to find Mother in contempt for withholding parenting time from Father.

**{¶ 60}** Father's seventh assignment of error is overruled.

**{¶ 61}** Assignment of Error No. 1 on Cross-Appeal:

> THE TRIAL COURT ERRED IN AWARDING JUST $5,000 IN ATTORNEY FEES TO APPELLEE FOR APPELLANT'S CONTEMPTIOUS [sic] AND FRIVILOUS [sic] CONDUCT.

**{¶ 62}** Mother cross-appeals with a single assignment of error, arguing that the trial court erred in ordering Father to only pay $5,000 for her attorney's fees.

**{¶ 63}** Mother asserted that she had incurred attorney's fees of $21,249.66 of which she had paid approximately $11,000. The trial court ordered that father pay $5,000 toward mother's attorney's fees, as a consequence of his being found in contempt, with a $750 setoff due to a finding of contempt against mother. Mother then sought an order that Father pay the entire balance of her attorney's fees, amounting to approximately $17,000. Mother claims that she is entitled to attorney fees pursuant to R.C. 3105.73 and 2323.51, arguing that Father's motion to modify his support payments was frivolous as his income had not substantially changed.

**{¶ 64}** Mother claims that Father went so far as to hire and present an expert

- 15 -

witness to opine on Father's earning capacity, but failed to provide the expert with his relevant tax returns disclosing that he was earning more than the expert opined and did not otherwise tell the expert that he was earning more. Mother asserts she incurred substantial attorney fees in the discovery and other litigation phases of defending against father's motion.

{¶ 65} R.C. 3105.73(B) provides:

> In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets. R.C. 2323.51 provides a mechanism for a party to seek sanctions against a party who has engaged in frivolous conduct in the litigation.

{¶ 66} R.C. 2323.51(B)(1) provides:

> Subject to divisions (B)(2) and (3), (C), and (D) of this section and except as otherwise provided in division (E)(2)(b) of section 101.15 or division (I)(2)(b) of section 121.22 of the Revised Code, at any time not more than thirty days after the entry of final judgment in a civil action or appeal, any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal. The court may assess and make an award to any party to the civil action or appeal who was adversely affected by frivolous conduct, as provided in division (B)(4) of this section.

{¶ 67} A prerequisite to relief under R.C. 2323.51 is a finding that a party engaged in frivolous conduct. *Ruffian, LLC v. Hayes*, 10th Dist. Franklin No. 09AP-948, 2011-Ohio-831, ¶ 42, citing R.C. 2323.51(B)(2)(C). The trial court did not award Mother attorney's fees because Father engaged in frivolous conduct, but rather "as a result of

being found in contempt."  Mother did not cross-appeal on the basis that the trial court did not find father engaged in frivolous conduct and has forfeited that issue for this appeal and R.C. 2323.51 is inapplicable.  The trial court did not otherwise abuse its discretion in not awarding mother all the attorney fees she sought and instead awarding her the sum of $5,000.

{¶ 68}  Mother's single assignment of error is overruled.

{¶ 69}  The trial court's judgment is affirmed as modified.

HENDRICKSON, P.J., and BYRNE, J., concur.